## THE NEW JERSEY ZINC COMPANY

*v.*

## THE FRANKLIN IRON COMPANY and others.

A decree for the defendant having been rendered in the United States circuit court, the complainant applied there for an injunction to prevent the defendant from violating such decree; pending that application, the complainant filed a bill in this court for an injunction on account of the same matter.—*Held,* that the injunction must be refused, because:

(1) A competent court having acquired jurisdiction, should be permitted to retain it to the end.

(2) An allegation of an intention to appeal from the decree rendered, is not a ground of relief or for changing the forum.

(3) Nor, that the defendant, who has obtained such decree personally, is the president of a corporation whose grantors were bound by a former adverse decree in the court of errors and appeals of New Jersey.

(4) Nor an allegation that the defendant collusively obtained his title for the very purpose of retrying the case in another forum, especially when the pleadings and proceedings show that this matter was discussed in the litigation in the United States court.

Bill for injunction, &c. On order to show cause why injunction should not issue. On bill and answers and affidavits.

*Mr. B. Williamson, Mr. John E. Parsons* of New York, and *Mr. F. J. Mather* of New York, for the complainants.

*Mr. T. N. McCarter* and *Mr. J. R. Emery*, for the defendants.

THE CHANCELLOR.

This is an application for a preliminary injunction on a bill filed by The New Jersey Zinc Company against The Franklin Iron Company, The Passaic Zinc Company, Wyatt Pierce and James Hyde. On the filing of the bill, an order to show cause was granted. The defendants have answered, and *ex parte* affidavits, as well as depositions taken on notice, were read on the argument. The complainant asks the aid of this court against that which, it insists, is a gross and most injurious violation of its rights as established by the decree of the court of errors and appeals of this state, in the case of *The New Jersey Zinc Co.* v. *The Boston Franklinite Co.*, 2 *McCart.* 418. That decree is now the decree of this court. By it The New Jersey Franklinite Company and The Boston Franklinite Company were enjoined from mining, carrying away or using, under any claim adverse to that of the complainant, any of the zinc ores or other ores found or to be found in or upon the southerly part of Mine Hill, excepting the metal or ore called franklinite, and iron ore, when found existing separate and distinct from zinc or other forms or compounds than franklinite; and from mining, carrying away or using any ores, metals or minerals found or to be found there, in which the mineral substance called franklinite exists in the mass of ore in a mixed state associated mechanically with any other form or compound of zinc, such as red oxide of zinc, silicate of zinc, or other substances of which zinc is a component part, &c.

The bill alleges that, after the making of that decree, (which became the decree of this court on the 3d of February, 1863,) and on or about the 16th of October, 1872, The Boston Franklinite Company conveyed all its property to

the defendant, The Franklin Iron Company; that the conveyance was made to carry out an arrangement or agreement between those two companies, by which the latter company was to acquire all the property of the former, subject to all the obligations of that company, including, as the complainant claims, the obligations and liabilities arising out of the above-mentioned decrees; that, as the complainant is informed and believes, it has been claimed that, through a scheme devised for the purpose of evading the effect of those decrees, Moses Taylor acquired the right of The Boston Franklinite Company, so far as it had any, in the lands, minerals and mineral rights, and then began a litigation, in the circuit court of the United States for the district of New Jersey, to obtain, if possible, an adjudication contrary to that of the court of errors and appeals and this court, on the subject matter of those decrees; and that a decree was obtained by Mr. Taylor, in that suit, in February, 1877, by which it was determined that, as between him and the complainant, he was seized in fee-simple of and entitled to all the ore usually known and designated as franklinite, and the ore called magnetite, and all other iron ores exising, found or to be found in or upon the southerly part of Mine Hill, and that, by that adjudication, it was determined that franklinite comprehends all the ore existing, found or to be found in the southerly part of Mine Hill which contains the mineral called franklinite, whether separate from other ores or associated with the silicate of zinc or other forms or compounds of zinc, except only so much of the mineral franklinite as may be found in mechanical admixture with the red oxide of zinc; and that the complainant intends to appeal from that decree.

The bill also states that, while that decree was in favor of Mr. Taylor, it in effect also adjudged that the complainant is, as against him, entitled to so much of the mineral franklinite as is found in the southerly part of Mine Hill in mechanical admixture with the red oxide of zinc. It alleges that the defendants have mined and removed large quanti-

New Jersey Zinc Co. v. Franklin Iron Co.

ties of the ores which, by the decrees of the court of errors and appeals and of this court, they are forbidden to remove, including large quantities of franklinite in mechanical admixture with the red oxide of zinc.

The bill sets forth the alleged scheme before referred to for the evasion of the decree of this court, and alleges that the means resorted to were the collusive and pretended foreclosure of a mortgage given by The Boston Franklinite Company to Oakes Ames, so as thus to create an outstanding title which, it might be claimed, was not affected by the decree of this court before referred to; the purchase by Oakes Ames of the property under the execution issued on the decree of foreclosure, and a conveyance by him to Taylor. It states that, notwithstanding the formal proceedings for foreclosure and the colorable sale thereunder, Ames and The Boston Franklinite Company continued to treat the mortgage as a subsisting security in the same manner as before; that that company continued to possess and use the property and rights described in the mortgage as before, and that any amount which was secured to Ames by the mortgage was subsequently paid to him. It further alleges that the defendants are, with full knowledge and in willful violation of the rights of the complainant, engaged in removing and disposing of the ores which, under the decree of this court, belong to the complainant.

The complainant expressly states in the bill that this suit has no reference to any ores which have been excavated and removed from the southerly part of Mine Hill by and under the direction of Moses Taylor individually, but does refer to such as have been excavated and removed by him as an officer of The Franklin Iron Company, of which company he is president.

The defendants, The Franklin Iron Company and Pierce and Hyde, by their answers, allege that, in mining and removing the ore, they have acted entirely under the authority of Moses Taylor, and in his right.

The Passaic Zinc Company, by its answer, alleges that it has not mined any ore or minerals, and that all of the ore which it has received has been received from Moses Taylor, under a contract with him which is set out in the answer. That contract provides for the delivery by him to that company of ore " the run of the mine," except fowlerite, garnet and other intrusive minerals. The Franklin Iron Company and Pierce and Hyde admit, in their answer, that in some parts of the veins which they are working, and in the franklinite ores which the company mines and disposes of, there is an admixture (but they say it is only to a small extent, and not exceeding an average of ten per cent.) of red oxide of zinc mineral with those ores.

The complainant insists that the claim that The Franklin Iron Company and Pierce and Hyde, in mining and removing ore, acting under the right of Moses Taylor and not otherwise, ought not to avail those defendants against the complainant's claim to an injunction to protect the rights of the latter as established by the decree of this court, because it appears that Mr. Taylor is the president of the Franklin Iron Company, Pierce the secretary, and Hyde one of its foremen. The complainant insists that the claim that those defendants work under Mr. Taylor's right, is disingenuous and merely colorable.

The right of Mr. Taylor in the premises is not, as has been before stated, brought into question in this suit. For the purposes of this application, it must be taken as having been established. He is entitled to the full benefit of it, and he may lawfully permit those who, of themselves, in their own right, could not work the mine to the extent to which he, under the decree of the federal court, may do it, or who could not of themselves lawfully do it at all, to work the mine to the full extent of his right, and they may lawfully so work it under him. A man who has been unsuccessful in an ejectment suit may, nevertheless, of course, lawfully occupy the property in dispute under one who may have subsequently established a title paramount to that

against which the litigation of the former was directed. The principle on which a purchaser with notice is protected by purchasing the title of another person who has purchased *bona fide* for valuable consideration without notice, is applicable.

But it is insisted by the complainant that the claim of The Franklin Iron Company (and, therefore, that of Pierce and Hyde) under consideration is not made *bona fide;* that, in fact, they are, merely under cover of a pretended subordination to Moses Taylor, working the mine and removing the ores in violation and defiance of the decree of this court. Reference on this point was made by complainant's counsel, on the argument, to the answer of those defendants sworn to by Mr. Taylor as president of The Franklin Iron Company, in which, in speaking as to payment of the expenses of mining the ores and shipping them to New York, it states that those defendants "understand" that the person, E. T. Hatfield, Jr., by whom those expenses are paid, represents Moses Taylor in the management and operation of the mine. It is argued that the answer is therefore disingenuous for the company, and Pierce, who, as before stated, is their secretary, and Hyde, who is one of their foremen, must have known positively whether Hatfield does or does not represent Mr. Taylor. But little weight, however, is to be attached to this criticism. The answer distinctly states that The Franklin Iron Company is doing all that it does at the mine under the right of Mr. Taylor individually, and not as an officer of that company. It alleges that the mining and removing of the ores has been done for and on account of Mr. Taylor; that an account entirely separate and distinct from the general operations of the company on its own account has been kept of the expense of mining and shipping the ores, and that that expense has been charged to the Moses Taylor mine, and has, from time to time, been re-imbursed by remittances from New York, from Hatfield, the person before referred to, who, as those defendants say they understand, represents Mr. Taylor in the management

New Jersey Zinc Co. *v.* Franklin Iron Co.

and operation of the mine. It denies that the company has, so far as those defendants know or believe, received any part of the proceeds of the ores, unless it may have been re-imbursed out of the proceeds, as to which they say they are unable to speak; and it avers that the truth is that the mining and shipping of the ore has been wholly done under the authority and direction of Mr. Taylor as an individual, and not in his capacity as an officer of the company, and that all of the ore has been shipped in his name, and not otherwise.

We are, however, to look to the affidavits annexed to the answer. The answer, so far as it is the answer of a corporation, is of no consequence except in connection with the affidavits. The affidavit of Hatfield and Benjamin G. Clarke, the former of whom is treasurer, and the latter a director of The Franklin Iron Company, speaks positively on the subject. They say that they know that the sales and shipments of ore which have been made from the opening since Moses Taylor took possession thereof, in April, 1877, have been made for and on account of Moses Taylor as an individual, and not in any way for or on account of The Franklin Iron Company, which company, they add, has no claim or title to the ore. They further swear that the contract between Mr. Taylor and The Passaic Zinc Company was as stated in the answer of that company, and that all payments on account of it have been made to Mr. Taylor individually, and not on behalf of The Franklin Iron Company.

The answer, as before remarked, is sworn to by Mr. Taylor. He makes the ordinary general affidavit of verification, that the matters and things contained in the answer are true so far as they relate to his own acts or those of the company, and that, so far as they relate to the acts of others, he believes them to be true. And here it may be remarked that the secretary of The Passaic Zinc Company, by his affidavit annexed to its answer, swears that the contract between that company and Mr. Taylor was made with the

latter individually, and not as an officer of The Franklin
Iron Company, and that the Passaic company did not know
or deal with The Franklin Iron Company in the transac-
tion; that he and the other officers of his company had,
before the contract was made, heard that Mr. Taylor's title
to the ores had been established by the decree of the federal
court, and that the complainant's miners and laborers had
withdrawn from the mine, and that Mr. Taylor had taken
possession thereof and was so in possession when the con-
tract was made. He adds that all payments which have
been made for ore delivered under the contract, have been
made by checks payable to the order of Mr. Taylor, and not
otherwise.

It appears that in March, 1877, when the injunction
issued out of the United States circuit court on the decree
in favor of Mr. Taylor was served, the complainant's miners
and laborers were then at work at and in the opening in con-
siderable force; that they continued to work there until after
an application for an attachment for contempt for a violation
of the injunction in so doing was made; and that they then
withdrew, and the complainant relinquished mining opera-
tions in the opening and abandoned it, and that thereupon
Pierce, under the authority of Mr. Taylor, took possession
of the mine about the 2d of April, 1877, and since that time
has superintended the mining operations there, which he
swears have been carried on on account of Mr. Taylor.

It further appears that, on the 28th of June, 1877, the
complainant filed its bill in the circuit court of the United
States for the district of New Jersey, against Mr. Taylor, to
obtain an injunction on the foot of the decree of that court,
(the correctness of which, however, it did not acknowledge,)
to restrain him from digging, mining, carrying away or
using any of the mineral franklinite in the southerly part of
Mine Hill, in mechanical admixture with the red oxide of
zinc, and from molesting, hindering or preventing it in the
exercise of its rights under that decree. Mr. Taylor, on the
10th of October, 1877, filed his answer to that bill, and the

motion for an injunction was argued, but it has not yet been decided.

The question, therefore, as to the rights of the complainant under that decree, has been submitted to the tribunal in which the decree was made. That is the appropriate forum for the determination of the question. There is no necessity for drawing it into this court, nor would there be any propriety in doing so. It is not only in course of litigation in the proper tribunal, but the litigation has progressed so far that the parties to the controversy have been heard on the subject, and only await the adjudication. Every consideration, not only of comity, but of regard for the wise, prudent and orderly administration of justice, forbids that this court should, under the circumstances, assume the determination of the question.

It is urged, however, that The Franklin Iron Company and Pierce and Hyde are amenable to this court under its decree, even if it be conceded that they are protected by the decree of the federal court to the extent of Mr. Taylor's rights as established there; for Taylor himself has no right, under that decree, to franklinite in mechanical admixture with the red oxide of zinc, which, they admit, they take from the opening and ship away. But they allege that they are operating under him, and in his right alone. He is interested in the question, and it is before the proper tribunal. There is no necessity for this court to hold them to account for having gone beyond the bounds set to Taylor by the decree of the federal court. Nor should it make the fact that they have so exceeded those bounds the occasion for asserting its jurisdiction over the subject, and, on the ground of vindicating the authority of its decree, admit the controversy to its forum, and so open the way to a conflict of jurisdiction between it and the federal court. Such conflicts are to be deprecated and avoided, and they can only be avoided by a strict adherence to the rule that the court which first obtains jurisdiction shall retain it to the end. That rule is established as to suits over which both the fed-

New Jersey Zinc Co. *v.* Franklin Iron Co.

eral and state courts have jurisdiction. *Riggs* v. *Johnson County*, 6 *Wall.* 166 ; *Peck* v. *Jenness*, 7 *How.* 624; *Akerly* v. *Vilas*, 15 *Wis.* 401; *Home Ins. Co.* v. *Howell*, 9 *C. E. Gr.* 238.

Again, by the affidavits annexed to their answers, the defendants deny the equity of the bill. The general rule, which is subject to but few exceptions, is, that if the facts constituting the claim of the complainant for the immediate interposition of the court are controverted under oath by the defendant, the court will not interfere at the initial step of the cause. *Citizens Coach Co.* v. *Camden Horse R. R. Co.*, 2 *Stew.* 299. It is true, the answers and affidavits are silent as to the charge of collusion, but the title obtained by Mr. Taylor under the foreclosure was, as appears by the record, called in question and adjudicated upon favorably to him in the suit in the United States court, brought by him against the complainant in this suit. It appears, by the answer of the latter in that case, that it set up in its defence the decree of this court, and averred that the foreclosure and the sale under it were collusive and a mere pretence, and were designed merely to evade the effect of that decree, and that Mr. Taylor took title with full notice of all the circumstances. The answer "showed and charged" that he was not the real party in interest, but that Oakes Ames and others were interested with him, and that that suit was carried on as a mere matter of speculation, and in the hope that the United States court might disregard the judicial decision of the state tribunals, where, as it alleged, all the questions involved in that controversy had been litigated and determined, and in reliance upon whose judgment a very large amount of capital had been invested. The subject has been passed upon by a competent tribunal adversely to the complainant.

The order to show cause will be discharged, but without costs.