This is one of eleven suits instituted in this court seeking the cancellation and surrender of several policies of insurance in the aggregate sum of $1,000,000, covering the life of one William H. Baker, on the ground that their issuance was procured by fraud. The policies were issued during the late summer and early fall of 1931, and the insured, a resident of Montclair, New Jersey, died on May 13th, 1932. The defendant in this suit was named as beneficiary in all of the policies except those of the Travelers Insurance Company, which are in the aggregate sum of $50,000, and in which his "executors, administrators and assigns" were named as beneficiaries. The allegations of fraud contained in the bill in this cause are sufficiently set forth in the opinion of this court on a motion to strike the bill and reported in 111 N.J. Eq. 166. Similar allegations are contained in the other bills of complaint. At about the same time these bills were filed similar bills were filed by these several complainants in the Delaware court of chancery seeking the same relief sought here, and eleven actions at law, nine in the New York supreme court, one in the United States district court for the district of New Jersey and one in the New Jersey supreme court, were begun by the respective beneficiaries, in which they sought to rcover upon the policies so issued. After the denial of the motions to strike the several bills, application was made in each suit for an order to show cause why the prosecution of the corresponding action at law should not be enjoined pending the final hearing in this court. Such order, with temporary restraint, was accordingly issued and the matter now comes before the court on the return thereof. Before the return day of that order the defendants began ten equity suits in New York in which they sought to enjoin the prosecution of the suits in this court and pendente lite
injunctions were issued. This resulted in an impasse until on appeal *Page 182 
to the appellate division of the New York supreme court those injunctions were vacated. Merritt-Chapman Scott Corp. v.Mutual Benefit Life Insurance Co., 260 N.Y. Supp. 374. Since then issue was joined here and the several causes have been set down for final hearing early in February of this year. The delay in the disposition of these orders to show cause has been due largely to the impasse referred to.
The application for the order to show cause in this suit was based upon affidavits in which the fraud alleged in the bill of complaint is set out in great detail. Although in the defendant's answer there is a general denial of the fraud alleged in the bill, there is, on this application, no denial of the fraud charged in the supporting affidavits, and, therefore, for the purpose of this motion, a prima facie case of fraud appears and it will be so considered. On this motion, also, the pendency of the Delaware suits in chancery may be disregarded. Some of them have been discontinued, and, I am informed, the others will be. They must be before the final hearing here. The New Jersey supreme court action against The Sun Life Insurance Company and that company's suit in this court, the New York supreme court actions against The Mutual Benefit Life Insurance Company and The Provident Mutual Life Insurance Company, and the corresponding suits in this court, may also be disregarded, as I have been advised by counsel that those controversies have been settled since the preparation of this opinion was begun. The decision in the present suit will be dispositive of the remaining cases.
The present motion is resisted by the defendant on the ground that the New York law action has precedence in point of time over this suit; that the New York court, having jurisdiction both at law and in equity, this complainant's remedy there is adequate and complete; and that the complainant's conduct in instituting suits both here and in the Delaware chancery court, and in interposing equitable defenses in the New York law actions, is unconscionable, oppressive, and evidences bad faith and a design to harass, annoy and vex the defendant; that it does not, therefore, come into this court of conscience with clean hands and *Page 183 
should be hence dismissed. This last point has already been decided adversely to the defendant's contention by the appellate division of the supreme court of New York, where the same argument was advanced by this defendant (respondent there) in support of the New York injunction. Merritt-Chapman ScottCorp. v. Mutual Benefit Life Insurance Co., supra. I am in accord with that court's findings on that point. That court also held that this suit preceded the New York action and complainant contends that such finding by a court of the defendant's own choosing is res adjudicata and that the defendant is estopped to assert the contrary fact. In view of the conclusion at which I have arrived, the question of estoppel need not be considered.
That this court has power to enjoin one subject to its jurisdiction from the prosecution of an action at law pending the determination of the validity of the instrument upon which such law action is based and alleged to be void for fraud, is elementary; and this, also, whether such action is pending in the law courts of this or of a foreign jurisdiction, and irrespective of precedence of time between this and the law courts, providing the remedy here is more complete and adequate than at law. HomeInsurance Co. v. Howell, 24 N.J. Eq. 238; New Jersey Zinc Co.
v. Franklin Iron Co., 29 N.J. Eq. 422; Margarum v. Moon,63 N.J. Eq. 586; Bigelow v. Old Dominion Copper Mining andSmelting Co., 74 N.J. Eq. 457; Lehigh Valley Railroad Co. v.Andrus, 91 N.J. Eq. 225; Caruso v. Caruso, 103 N.J. Eq. 487.
And as between two courts of concurrent or co-ordinate jurisdiction, mere precedence in time in acquiring jurisdiction of the controversy is enough to warrant the first court in restraining the prosecution of the cause in the other. Peck v.Jenness, 48 U.S. 612, 624; Hagan v. Lucas, 35 U.S. 400;9 L.Ed. 471; Home Insurance Co. v. Howell, supra; Bigelow v.Old Dominion Copper Mining and Smelting Co., supra.
The principle lying at the foundation of this rule was early recognized and applied in England by Lord Ellenborough, just after the close of the eighteenth century, in Payne v. Drew, 4East 523, cited in the United States, ex rel. Riggs *Page 184 
v. Board of Supervisors, 73 U.S. 166, 196; 18 L.Ed. 768, 776,
and also in Taylor v. Carryl, 61 U.S. 583, 617; 15 L.Ed. 1028,1032.
The primary question to be decided here is which suit, that in this court or the New York law action, has precedence in point of time of commencement.
The New Jersey rule as to commencement of a suit in chancery has its foundation in the English rule, the origin of which is historically stated in Crowell v. Botsford, 16 N.J. Eq. 458
(at p. 460), as follows:
"The commencement of a suit in chancery was originally by bill, before the issuing of a subpoena. The bill contained, as it still does, a prayer for subpoena, which issued as soon as the bill was filed. Gilb. For. Rom. 64; 3 Bl. Com. 442, 443.
"Yet in a very early treatise upon the proceedings of the court of chancery, it is stated that `notwithstanding the practice before this time hath been that no subpoena should be sued forth of the court of chancery, without a bill first exhibited; yet of late, for the ease of all suitors and subjects, it hath been thought good that every man may have a subpoena out of the same court, without a bill first exhibited.' Toth. Proceed. 1.
"And by Lord Clarendon's orders in chancery, in 1661, it is directed, `that all plaintiffs may have liberty to take forth subpoenas ad respondendum before the filing of their bills, if they please, notwithstanding any late order or usage to the contrary.' Beams' Orders in Chan. 168.
"This order continued in force until 1705, when it was enacted (by statute of Ann ch. 16 § 22) that `no subpoena or any other process for appearance, do issue out of any court of equity, till after the bill is filed, except in case of bills for injunction to stay waste, or stay suits at law commenced."
A similar statute was adopted in New Jersey as early as June 13th, 1799. Patterson's Laws 428. The essential provisions of that act respecting the issuance of subpoena, omitting the exceptions, are now contained in our present Chancery act (1Comp. Stat. p. 411 § 3), and to-day "suits in *Page 185 
chancery are commenced by the issuance and service of subpoena and the making of a bona fide attempt to serve it after the bill has been filed." Delaware River Quarry and ConstructionCo. v. Board of Chosen Freeholders of the County of Mercer,88 N.J. Eq. 506; or, as stated in Hermann v. Mexican PetroleumCo., 85 N.J. Eq. 367, by "issuance of subpoena after bill filed and putting it in motion for service." See, also, M. Haupt Co.
v. Board of Education of Edgewater (Court of Errors andAppeals), 87 N.J. Eq. 362; West Jersey and Seashore RailroadCo. v. County of Cape May, 100 N.J. Eq. 181; Lehigh ValleyRailroad Co. v. Andrus, supra; Crawford v. Township ofMaplewood, 105 N.J. Eq. 416; Malba Terrace Corp. v. PortaupeckProperties, Inc., 105 N.J. Eq. 453. The instant suit, under this rule, was "commenced" on June 28th, 1932, as bill was filed, subpoena issued and delivered to the sheriff for service on that day. As to the New York action at law the prosecution of which is sought to be enjoined in this suit, the time when that action is deemed to have been commenced is a question for determination by the New York law. Merritt-Chapman Scott Corp. v. MutualBenefit Life Insurance Co., supra. Under section 218, of the New York Civil Practice act, an action at law is "commenced" by service of the summons without the complaint. Campbell v. NewYork Evening Post, 245 N.Y. 320,326. The summons in the New York action here involved was served on June 29th, 1932. It is clear, then, that the instant suit in this court was "commenced" a full day before the New York action. If priority in "commencement" is the test to be here applied, there is, therefore, no doubt as to the propriety of this court's enjoining the prosecution of the New York action at law. Home Insurance Co. v. Howell, supra;Peck v. Jenness, supra. The same statement applies to the suits instituted in this court by The New England Mutual Life Insurance Company (docket 90/672); The Mutual Life Insurance Company (docket 90/669); The Guardian Life Insurance Company (docket 90/671), and The Travelers Insurance Company (docket 90/669), all of which suits were "commenced" on June 28th, 1932, by the *Page 186 
filing of the bills of complaint, the issuance of subpoenas and the delivery thereof to the sheriff for service, whereas the corresponding New York law actions were all "commenced" by the service of summons on June 29th, 1932, a day later; and, in the Travelers case, the law action in the United States district court for the district of New Jersey was commenced July 1st, 1932. The suits instituted by the Berkshire Life Insurance Company (docket 90/681) and the Massachuestts Mutual Life Insurance Company (docket 90/682), were "commenced" on June 29th, 1932, and that by the Aetna Life Insurance Company (docket 90/692), on June 30th, 1932, while the corresponding New York law actions were all "commenced" on June 29th, 1932. It therefore appears that the Berkshire and the Massachusetts Mutual suits in this court were "commenced" on the same day, and the Aetna suit on the day following that on which the corresponding New York law actions were begun, although the proofs show that of these the first two New York actions have a priority of a few hours in point of "commencement," and the last has a priority in "commencement" of one day. If the test to be applied here were the time of the "commencement" of the respective suits, the New York actions in these three cases would have actual precedence in point of time (although the law does not take account of fractions of a day, and the point should not turn upon a nicety of calculation of hours and minutes), and for that reason the propriety of the issuance of an injunction by this court against their prosecution would be questionable. But I think it is evident from the decisions touching this point that priority in the "commencement" of the suit is not the controlling factor. InBigelow v. Old Dominion Copper Mining and Smelting Co., supra
(at p. 474), Chancellor Pitney said: "There is the general rule, essential to the orderly administration of justice, that as between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of thecontroversy ought to be allowed to proceed and dispose of it without interference, a rule established, of course, primarily for the benefit of the suitor, rather than for the protection *Page 187 
of the dignity of the court." (Italics mine.) In Home InsuranceCo. v. Howell, supra, the chancellor said: "The general rule is, that as between courts of concurrent and co-ordinate jurisdiction, * * * the court that first obtains possession ofthe controversy must be allowed to dispose of it, without interference from the co-ordinate court." (Italics mine.) The same language was used by the chief-justice of the United States supreme court in United States, ex rel. Riggs v. Board ofSupervisors, supra. (And there is, of course, a clear distinction between having jurisdiction over a cause of action and of the parties thereto.) It would seem, therefore, that it is not the mere priority in the "commencement" of the suit, but the priority in "possession of the controversy" by the respective courts which is the controlling factor touching the question as to which court should yield.
In New Jersey the bill of complaint must be filed, and was here filed, prior to the issuance of subpoena, while in New York the summons was issued in each case approximately one month before the complaint was served and filed. In the New Jersey cases the court had control (or possession) of the controversy as soon as the bill was filed, for the bill could not thereafter be withdrawn or dismissed, even on the complainant's own motion, without an order of court. Also, it appears that in each New Jersey case subpoena was immediately issued and delivered to the sheriff, an officer of the law, for service. I think it cannot be denied that at this point, at least, the court had "possession of the controversy" although it did not, until service of subpoena, have jurisdiction over the defendants. On the other hand, the proof is that the New York summons was issued by the plaintiff's attorney, served by an attache of his office, and possession of the original retained by that attorney, and no complaint was served until a month later. The New York summons does not indicate the nature of the cause of action, except that it is at law, and not until some paper, at least, is filed in the court
can it be said that the court has "possession of the controversy." Until that time the court is not informed *Page 188 
and does not take cognizance of the controversy; and the defendant is not apprised of the nature of the suit until the complaint is served. Dancel v. Goodyear (N.Y.),106 Fed. Rep. 551. I am informed by counsel, arguendo, and it is not disputed, that under the New York practice the plaintiff's attorney retains possession of both summons and complaint until judgment is about to be entered, when they are filed; that the first paper to be filed in court in such an action is what is called "a note of issue" which is filed after service of answer and issue joined; and that no "note of issue" was filed in any of the New York actions until September 16th, 1932, and then only in three of them. In the remaining cases, except as to those removed to the federal courts, there is as yet nothing on file in the New York courts to indicate the pendency of the suit. Under these circumstances, I am unable to see how it can be maintained that the New York court has "possession of the controversy" at all, even at this late day, and it may never get possession in the strict sense of that term unless the case goes to trial. And even if we assume that upon the filing of the summons and complaint "possession of the controversy" then acquired by the court relates back to the time of the service of the summons, I think it must be conceded that relation back cannot begin before the date of filing. If actual possession by some other court intervenes, that court's "possession of the controversy" has precedence. And it seems to me that this must have been the theory upon which the New York courts held that the New Jersey suits preceded the New York law actions. The New York court had before it all the facts respecting the issuance and service of summons, and the filing of the bills of complaint and the issuance and service of subpoena here, that are now before this court, and must have known that in two of the cases the service of summons in the New York action preceded delivery to the sheriff of the subpoena in the New Jersey action by a matter of hours and in one action by a full day. Notwithstanding this, the court said, "for these reasons we hold that the New Jersey suit preceded the New York action;" and preceding that statement the court significantly *Page 189 
commented: "No complaint accompanied that summons, but the complaint was served on July 29th, 1932, and seeks recovery of the amount of the policies." It is apparent that the fact that no complaint accompanied the summons in the New York action was one of the reasons upon which the decision that the New Jersey suit had precedence was based; but assuming that complete possession of this controversy is not obtained until the court has obtained jurisdiction both of the subject-matter of the litigation and of the parties, the record here clearly shows that all the suits in this court have precedence, as in every case the bill was filed and subpoena issued and served prior to the service of summons and the filing of complaint in the New York court.
On behalf of the defendants it is urged that the New York law court has as broad equity powers as the New Jersey court of chancery and that, therefore, no reason exists for the restraint of the prosecution of the New York law actions because the complainants here, as defendants there, may interpose equitable defenses and thus obtain as complete and adequate a remedy as can be obtained here. But the burden of showing that the relief afforded the complainants by way of defense in the New York actions is as adequate and complete as in this court is upon the defendants; and they cite numerous authorities in support of that contention. But assuming the broadest equitable powers to reside in the New York court, and that they may be exercised in the pending law actions, if equitable defenses are interposed therein, they must still be more or less under the control of the plaintiff; and it does not appear that the law action will be stayed pending the disposition of the equitable issue. Obviously, the insurance company should not be obliged to defend a suit on a policy which is void for fraud, and the question of its validity should be first decided. It is not clear that it would be in any court except one in which the primary action seeks the relief of cancellation. Such is the relief sought here on an original bill. On the other hand, the New York actions seek recovery upon the policies, and, in a law action, triable before a jury, orderly procedure requires the plaintiff to put *Page 190 
in his case first The defendant is then on his defense, notwithstanding that he may also be a counter-claimant. The advantage to the plaintiff of this position in the litigation — before a jury — is obvious; and "mere defense, however perfect, is not relief." Smith-Austermuhl Co. v. Jersey RailwaysAdvertising Co., 89 N.J. Eq. 12; and especially so, where the defendant must necessarily stand convicted before the jury before he has had an opportunity to show that the instrument upon which the plaintiff's suit is based is void. The counter-claim in the New York suit for cancellation was not begun until answer served, and then only to avoid default. To permit the defendants to compel the complainants to try that counter-action in a jurisdiction of the defendant's own choosing would be to do violence to the rule laid down by Chancellor Williamson, inCornish v. Bryan (1854), 10 N.J. Eq. 146, where he said: "If a party holds an obligation which ought to be canceled, and persists in holding it for the purpose of harassing his obligor with a suit, he ought not to be permitted to select his own place, time and circumstance for such prosecution." And the opportunity or ability to make that defense (press the counter-claim) may be lost or weakened by the studied delay of the other party. New York Insurance Co. v. Steinman, 103 N.J. Eq. 403
(at p. 405). "Complainants are not to be put to the hazard at law when the requirements of equity are less exacting."Commercial Casualty Insurance Co. v. Southern Surety Co.,100 N.J. Eq. 92; affirmed, 101 N.J. Eq. 738.
Extended arguments against the proposed restraint are advanced by counsel for defendants, based upon the language of Chancellor Pitney in Bigelow v. Old Dominion Copper Mining and SmeltingCo., supra, but the chancellor's remarks were there addressed to an application to restrain a prior, and not a subsequent, suit in another jurisdiction and must be so considered; and as it has already been held that the New Jersey action is prior to the New York action, this language has no application here. The same may be said of the comment of the appellate division of the New York supreme court in Merritt-Chapman Scott Corp. v. Mutual *Page 191 Benefit Life Insurance Co., supra. That court having already held that the New Jersey suit preceded the New York law action, its language must be construed as applicable to prior suits in other jurisdictions; and, so construed, is not opposed to the rule in this court. But by any other construction, it would be in conflict with our decisions and those of the United States supreme court. Home Insurance Co. v. Howell, supra; Peck v.Jenness, supra. The first of these two cases, it seems to me, is a case exactly in point. There, suit having first been commenced in this court for relief against certain policies of insurance alleged to have been fraudulently obtained from the complainant upon the defendant's property in Illinois, and defendant having afterward begun suit upon the policies in the courts of that state, which suit had been removed to the federal court, Chancellor Runyon allowed an injunction against the prosecution of this action notwithstanding the insurance company might have had complete relief in the federal court either at law or by recourse to its equity side. In his opinion he quoted with approval the remarks of Mr. Justice Grier in Peck v. Jenness,supra, to the effect that the rule giving exclusive jurisdiction to the court which first obtains "possession of the controversy" has its foundation not only in comity but in necessity. "For, if the one may enjoin, the other may retort by injunction, and thus the parties be without remedy, being liable for a process for contempt in one, if they dare to proceed in the other," a remark reiterated by the United States supreme court in CentralNational Bank v. Stevens, 169 U.S. 432, 459, and peculiarly pertinent to the present litigation. Defendants rely upon TitleGuaranty and Trust Co. v. Trenton Potteries Co., 56 N.J. Eq. 441,
as authority against the issuance of an injunction here. The case is not in point. There it was sought to restrain a prior New York action; but our court of last resort recognized the right of this court to restrain such prior action if the remedy there was not adequate, and said it would not do so "provided the appellant can, in its defense of that suit, show the real agreement between the parties as fully as it would be permitted to do in the suit brought here for the reformation of *Page 192 
the written contract." But the complainants here contend that it would be impossible for them, in the New York action, to "show the real agreement between the parties," or that there was no agreement at all, because of the provisions of section 352 of the New York Civil Practice act, which prohibits physicians from disclosing professional information; that the complainant's case depends entirely upon the testimony of examining physicians whose testimony cannot be received in the New York court, while it will be here; that as such testimony will be received in New Jersey and not in New York the alleged fraud can be proved here and not there, which is sufficient reason for enjoining the New York suit. That such testimony will be barred in New York by the act referred to is not denied. A clear prima facie case of fraud having been made out by affidavits which are not denied, a justifiable suspicion arises that the whole scheme of negotiating policies in excess of $1,000,000 upon the life of the insured was instituted and carried out in an attempt to perpetrate a colossal fraud upon the insurance companies involved. Under these circumstances, at least on this motion, this court should not be over-anxious to assist the defendants "to shift the scene of the contest" to a jurisdiction where, perchance, because of public policy, rules of evidence, or what not, there exists a greater possibility of successfully consummating the fraudulent scheme; or where the defendant fancies the difficulties of proving such fraud may be insurmountable. It requires no unreasonable stretch of the imagination to conceive that to have been the purpose of the defendants in instituting suits on the policies in the New York courts, and to thus obtain "an inequitable advantage over the complainant." This court ought not to aid in suppressing evidence of fraud. In this connection, counsel for defendants cite Edjell v. Clarke (N.Y.), 19 App. Div. 199, andWebster v. Columbian National Life Insurance Co., 131 App. Div. 837; affirmed, 196 N.Y. 523, and quotes from the court's opinion in the latter case as follows:
"The fact that a witness is disqualified in New York but is competent to testify in Massachusetts furnishes no reason *Page 193 
either legal or equitable why the defendant should be permitted to shift the scene of the contest from the less liberal to the more liberal state," and argue that this court's injunctive powers should not be based upon any theory that this court knows better how to do justice than the New York court, nor that it recognizes different rules of law or equity, citing, also,Bigelow v. Old Dominion Copper Mining and Smelting Co.,supra. The doctrine of these cases is approved, but its attempted application is not. The defendants, not the complainants, are attempting "to shift the scene of the contest." The complainants are content here, the defendants are not. The "more liberal state" to the one, is the "less liberal state" to the other; but precedence in point of time determines who is the shifter and tips the scale in favor of the complainants. And it is not the "dignity of the court" which is to be upheld, but the rights of the respective parties that must be recognized. As already stated, the fraud charged, on this motion, is not denied. For the purposes of this motion the fact of fraud is, therefore, assumed. The question of a permanent injunction against the prosecution of the New York law actions is not now before the court. The present inquiry is "shall those actions be stayed pending the determination of the question touching the validity of the policies of insurance?" On final hearing, of course, the fraud charged must be proved by competent evidence and the complainant must sustain the burden of proof; and then the defendant may have the benefit of its formal denial by answer, and may support that denial by competent proof. But the fraud, if the charge is true, was committed in this state, because it was in this state that the application was made for the policies, and the false and fraudulent answers were made to the questions contained in the applications. To say that this court must surrender its jurisdiction to prevent the consummation of a colossal fraud, conceived, initiated and all but completed, by one of its own citizens and within its own borders; that it cannot deny the intended beneficiaries the anticipated fruits of such perfidy; but that it must relegate the parties to a jurisdiction where it is impossible, because *Page 194 
of technical rules of evidence, or what not, to prove the admitted fraud, is to me a monstrous doctrine, deserving of not a moment's consideration. Indeed, the whole defense to this motion has been a perfect maze of technicalities in which can be discovered not one word of denial of the charge of fraud, or in defense or justification thereof. The only explanation of this otherwise unexplainable attitude on the part of the defendant is that suggested by the appellate division of the New York supreme court in Merritt-Chapman Scott Corp. v. Mutual Benefit LifeInsurance Co., supra, when it said: "An important fact here is that plaintiff took part in the suits in New Jersey * * * so long as it seemed desirable to litigate there. It was only when there was danger of a final adverse decision as foreshadowed in the opinion of the vice-chancellor that this application was made in New York for the preliminary injunction below." But there is no occasion for panic or alarm on the part of the defendant on this score, providing all the transactions here involved were open and above board, and will stand the scrutiny of the court. The complainant is not a favored suitor, nor are rights of litigants to serve here as pawns in a game. The final decision is not yet and will be made only after full disclosure and then according to the principles of right and justice as applied in a court of conscience.
The restraint imposed by the order to show cause will be continued pending the final disposition of this cause. *Page 195