Liberty Surety Bond Company, a corporation organized under the insurance law of the State of New Jersey, deposited with the commissioner of banking and insurance of this state, pursuant to section 10 of the Insurance Company act, two bonds and mortgages of $65,000 and $45,000 respectively, "for the benefit and security for all the policyholders of the company depositing the same."
It thereafter commenced to do business and wrote divers policies or contracts of insurance, including one or more whereby it insured Aetna Casualty and Surety Company. Subsequently it commenced a voluntary dissolution, and the commissioner of banking and insurance has approved the proceedings in such voluntary dissolution.
The Aetna company incurred loss covered by its insurance, whereby it became entitled to payment thereof from the Liberty company. The Aetna company filed its bill in this court on April 18th, 1933, setting forth the facts stated (together with additional facts indicating that International Re-insurance Corporation (of Delaware) and General Indemnity Company of America (a New York corporation) claim or may claim rights of ownership or interest in said bonds and mortgages by reason of circumstances arising subsequent to the deposit by Liberty company); alleging, in effect, that the bonds and mortgages are a trust fund for its benefit inter alia; praying restraint against the withdrawal of said bonds and mortgages from the possession of the commissioner by the Liberty company or the International or the General Indemnity, and a decree for payment of its (Aetna's) claim out of the said bonds and mortgages or the proceeds thereof.
Order to show cause, with interim restraint against disposition *Page 518 
of the bonds and mortgages, was issued and served on the defendants the same day.
On the following day, April 19th, bill was filed in the United States district court for the district of New Jersey in insolvency proceedings for the winding up of the International Company, and ancillary receivers appointed for that company (receivers having been appointed in Delaware on the same day, on a bill filed a few weeks previously).
On May 16th, an order was entered by this court appointing a receiver in dissolution for the Liberty company, and he qualified; and an order to show cause was entered for the commissioner of banking and insurance to turn over to said Liberty company receiver the two bonds and mortgages in question (pursuant to section 11 of the Insurance act).
The receivers of the International then filed in the federal court a petition alleging that the said securities are a part of the assets of the said International company; and obtained an order directed against the commissioner of banking and insurance, and against the receiver of Liberty company, to show cause why the commissioner should not be ordered to turn over the securities to the International receivers.
This action being brought to the attention of this court, the Liberty company receiver was directed to apply to the federal court for leave to enter special appearance to seek the dismissal of that petition as having been brought against this court's receiver without prior leave being asked of this court, and as constituting an interference with property in the possession of this court, and an interference with the administration of the affairs of the Liberty company in this court.
Leave was granted by the federal court for such special appearance and the Liberty company receiver moved for the dismissal of the proceeding, as directed. That application remains pending and undetermined; and the issue as to the order for the commissioner to turn over the securities to the International receivers also remains pending and undetermined. The federal court, however, directed its receivers to apply to this court for leave to make the Liberty company *Page 519 
receiver a party respondent to the proceeding in the federal court; and petition for such leave has been presented to this court by the International receivers.
There is, of course, complete comity between the two courts, and the aim and desire of each is that all conflict may be avoided and the respective rights and duties in a rather complex situation be determined in a proper and orderly procedure; and to that end conference has been had between the two courts.
It seems clear upon consideration that the main proceeding in the federal court is a proceeding in rem or quasi in rem, involving the administration, winding up and distribution of the affairs and assets of the International company. Essentially it is the administration of a trust — the trust res comprising the assets of the International company. The proceeding in the state court is also a proceeding in rem or quasi in rem, involving primarily the administration and distribution of a trust, to wit, the trust fund composed of the two bonds and mortgages now in the possession of the commissioner, and secondarily, the administration and winding up of the affairs and assets of the Liberty company in voluntary dissolution.
Although the general subject-matter of the two proceedings is not the same, nevertheless the particular item now in dispute is the same in both proceedings, i.e., the two securities now in the actual possession of the commissioner. They constitute the particular res in respect to which it must be determined which court has the superior or controlling jurisdiction thereof.
The jurisdiction of the federal court and the state court in such matters is concurrent — neither one is inherently, or by legal fiat, superior to the other. That being so, the jurisdiction of the court which has first acquired jurisdiction of the subject-matter of a proceeding in rem is exclusive, and the other court is precluded from exercising jurisdiction over the same res. Kline v. Burke Construction Co., 260 U.S. 226;43 Sup. Ct. 79; Harkin v. Brundage, 276 U.S. 36. The same principle is expressed in the determinations of the courts *Page 520 
of this state. Cf. Umland v. United Public Service Co.,111 N.J. Eq. 613; 163 Atl. Rep. 17; Prudential Insurance Co. v.Merritt-Chapman Scott Co., 112 N.J. Eq. 179;163 Atl. Rep. 894.
It is obvious of course that the two bonds and mortgages constitute the actual res involved in the suit in this court, in the original phase of that suit — being a suit setting up that particular res as a trust fund and seeking the administration and enforcement of the alleged trust. It is not so clear that the two securities are the res or even part of the res involved in the insolvency administration suit of the International company in the federal court. The utmost that appears in the record before this court is the bare allegation in the petition filed herein by the International receivers (asking leave of this court to make the Liberty receiver a party respondent in the federal proceeding), that the federal receivers "filed a petition" in the federal court, "alleging (italics mine) that the securities * * * form part of the estate of the International."
Assuming, however, that the securities may be deemed to be part of the res involved in the federal suit, the rule as to part cannot be different from the rule as to the whole. If the two suits each involved precisely the same subject-matter — if for instance, each suit was for the winding up of the International corporation, or if each suit was for the determination and administration of the trust in the two securities — under the law as expressed both by the highest court of this state, and the highest court of the United States, the jurisdiction of that court which first obtained jurisdiction is exclusive.
"As between two courts of concurrent and co-ordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill, is entitled to retain it without interference, and cannot be deprived of its right to do so because it may not have obtained prior physical possession, by its receiver, of the property in dispute." Harkins v. Brundage, supra.
"When a court of competent jurisdiction takes possession of property through its officers, this withdraws the property *Page 521 
from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession and control of the property." (Citing cases.) Isaacs v. Hobbs Tieand Timber Co., 282 U.S. 734 (at p. 738, 739).
In the present instance, the bill in this court was filed — and process issued and served on the International the day preceding the filing of the bill in the federal court. This court, therefore, first obtained jurisdiction of the res which is the subject-matter of the suit, and is entitled to retain such jurisdiction and to turn its constructive possession of the res
into actual possession; and of course it is not merely the right of this court — it is the right of the litigants in this court and therefore the duty of this court.
Under these circumstances therefore it seems clear that the application of the International receivers for leave to make the Liberty receiver party respondent to the federal court proceeding, should be denied. If the situation were the converse — if the federal court's jurisdiction had first attached to theres — it would be the duty of this court to grant such application; but not so where the jurisdiction of this court first attached to the res. Under the present circumstances such action would be futile and would result only in delay; for if such permission were granted, it would be the duty of this court to direct the Liberty receiver to move in the federal court for a dismissal of the proceeding as against himself (for the reasons already stated), and such dismissal would be ordered by the federal court, since the law is the same in both courts.
The application of the International receivers should therefore be denied — on the ground that this court has the prior and exclusive jurisdiction over the res in question, and therefore has the right and the duty to adjudicate all questions involving the disposition of that res and the several claims of interests or rights in and to the same or the proceeds thereof; and the order to show cause in this court should be made absolute and the restraint continued pendente lite. *Page 522 
It will be noted that the proceeding in this court has two phases — first, the trust phase, and second the foreclosure phase. It is first to be determined whether the alleged trust exists, and if so, who are the several persons interested therein and their respective rights thereunder, and in what manner those rights should be administered. If any party claims ownership of the res, contends that the res is not subject to the alleged trust, and the court should so find, the res would be directed to be turned over to such claimant. If, however, the trust be established, it will be observed that the rights of complainant (and of other possible policyholders of the Liberty), are not rights of absolute equitable ownership in the res or trust fund, but are the rights of pledgees or security-holders. It will be necessary therefore to foreclose the rights of any and all claimants to the "equity of redemption," sell the securities, and if there be proceeds, more than enough to pay the "mortgagees," determine the respective rights of claimants to the "equity of redemption" and make final distribution accordingly.
In either event — if it be found that the International had rights entitling it to the fund, or to some portion of the proceeds, such right now vests in the International receivers, and the fund (or the portion of the proceeds), would be turned over to them for administration by them in the winding up of the International.
As has already been said, the International was a party defendant to the bill in this court, and was served with the order to show cause on the day before the appointment of receivers for that company. In legal contemplation therefore, its receivers as well as itself, already have notice of the suit, notwithstanding that subpoena ad respondendum has not been served on it or its receivers. It would seem, however, the proper and orderly course, and in accordance with the principles of comity, that the complainant herein should be directed to file petition in the proceeding in the federal court, asking leave to make the International receivers parties defendant to the bill in this court in substitution for the International itself, and for leave to serve them with the usual *Page 523 subpoena ad respondendum. Doubtless, the federal court would have no objection or hesitation in granting such leave, reserving to its receivers the right to distribute or administer as a part of the assets of the International, such fund or sum, if any, as this court should find the International entitled to. Upon the making of such order by the federal court complainant can obtain appropriate corresponding order from this court.
The Liberty receiver should also be directed to prosecute his motion in the federal court for the dismissal of the International receivers' petition whereby they seek to obtain possession and control of the securities in question, on the ground that such proceeding tends to impair and defeat the jurisdiction of this court already attached to those securities. If the petitioners in that federal proceeding were not officers of the federal court, the usual step would be for this court to enjoin them against the further prosecution of that proceeding (Kline v. Burke Construction Co., supra), but in the present circumstances such a course is neither seemly, proper or necessary. *Page 524