## LEHIGH VALLEY RAILROAD COMPANY

*v.*

### JOHN E. ANDRUS.

[Submitted December 1st, 1919.   Decided February 1st, 1920.]

1. The court of chancery may enjoin the prosecution of a foreign suit, but this power ought to be exercised sparingly, and should not be used unless upon a clear showing that the process is being used in an unconscionable manner, or oppressively.

2. Where the courts of a sister state have complete jurisdiction over the issues raised before it, and of the parties, though the issues there and those raised before this court are not identical, and a decree in this suit would settle the rights of the parties conclusively, there is no conceivable legal theory upon which the defendant can be enjoined to forego the determination of his claim in the court of his choice, for the more comprehensive remedy of this court.

3. The filing of a bill and issuing of process not served in an action *in personam* against a non-resident do not commence a suit in equity; service is essential.

On motion for preliminary injunction and counter motion to set aside process.

*Messrs. Collins & Corbin,* for the complainant.

*Mr. Edward O. Stanley, Jr. (Messrs. Pitney, Hardin & Skinner),* for the defendant.

BACKES, V. C.

The complainant is the tenant of lands on the water front at Bayonne, under a lease made June 5th, 1889, for the term of sixty years, at a rental of $4,250 per annum for the first twenty years, payable quarter-yearly in advance, and for each ten-year period thereafter at a rental to be fixed by arbitrators, landlord and tenant each to select one, and the arbitrators to select an umpire in case they could not agree, and

15

"If for any cause a valid award fixing rentals shall not be made and delivered at or within the times above limited, then the landlord may recover by action from time to time at law or in equity a fair quarterly compensation for the use and occupation of the demised premises."

The complainant and defendant duly appointed arbitrators to appraise the rental of the ten-year period, beginning June 5th, 1919. The arbitrators were unable to agree upon an award or an umpire, and this without fault on the part of either complainant or defendant. The complainant asks this court to determine the rental.

On June 6th, 1919, after the bill was filed, the defendant sued the complainant in the supreme court of New York for use and occupation for the first quarter year—June 5th to September 5th, 1919—laying the damages at $17,067.75. The case was at issue and on the trial list when the defendant here was ordered to show cause why he should not be restrained from further prosecuting his action. Whether this order should be made absolute or discharged is one of the questions to be decided.

· The bill presents a cause for equitable relief. It is not to be likened unto a bill for specific performance of a contract for the sale of land at a price to be fixed by arbitrators. There the contract is executory. The award is of the essence of the contract, and equity will not appoint arbitrators to complete the contract for the purpose of enforcement. That is well settled. *McKibbin* v. *Brown, 14 N. J. Eq. 13; Woodruff* v. *Woodruff, 44 N. J. Eq. 349; Davila* v. *United Fruit Co., 88 N. J. Eq. 602.* Here the substance of the contract is the demise and the covenant to pay rent; and the tenant has been in possession. The method set up for ascertaining the rental is subsidiary and incidental, of form and not of substance; and having proved abortive the court will substitute itself for the arbitrators. *Dinham* v. *Bradford (1869), 5 L. R. Ch. App. 519,* is an illustration. There "it was agreed that one partner should purchase, at the close of the partnership, the share of the other; at a valuation by two persons. Trouble arising between the partners, no arbitrators were appointed and a bill was filed for a valuation. The defendant relied on the doctrine that an agreement for sale, price

to be fixed by arbitrators, with nothing more, cannot be carried into effect by the court. Lord Hatherley, L. C., said: 'This case is not like that of the sale of an estate, the price of which is to be settled by arbitration, but is a case in which the whole scope and object of the deed would be entirely frustrated if the court were to apply the well-known doctrine to the present circumstances. In cases of specific performance the matter is very plain and simple. One person agrees to sell his estate in a given way, and no rights are changed by the circumstance of that method of selling the estate having failed. The estate remains where it was and the money where it was. But here  *  *  *  it is much more like the case of an estate sold and the timber on a part to be taken at a valuation, the adjusting of matters of that sort forming part of the arrangement but being by no means the substance of the agreement. In such cases the court has found no difficulty. If the valuation cannot be made *modo et forma,* the court will substitute itself for the arbitrators. It is not the very essence and substance of the contract, so that no contract can be made out except through the medium of arbitrators. Here the property has been had and enjoyed, and the only question now is, What is right and proper to be done with regard to settling the price?' " Other cases adduced in which the doctrine was applied, some of which in circumstances are peculiarly like the one under consideration, are *Grosvenor* v. *Flint, 20 R. I. 21; 37 Atl. Rep. 304; Cooke* v. *Miller, 25 R. I. 92; 54 Atl. Rep. 927; Insurance Company* v. *Stephens, 214 N. Y. 488; 108 N. E. Rep. 856; Kaufman* v. *Liggett, 209 Pa. 87; 58 Atl. Rep. 129; Springer* v. *Borden, 154 Ill. 668; 39 N. E. Rep. 603; affirmed, 210 Ill. 518; 71 N. E. Rep. 34; Lowe* v. *Browne, 22 Ohio St. 463; Tobey Furniture Co.* v. *Rowe, 18 Ill. App. 293; Kelso* v. *Kelly, 1 Daly (N. Y.) 419.*

Nor is the above-quoted provision reserving to the landlord the right to sue quarter-yearly for use and occupation, in default of an award, a thing apart from the main covenant for a rental based upon a ten-year appraisal. It furnishes no distinct and independent *cause* of action for use and occupation, but simply gives a *right* of action in a contingency for a "fair quarterly

compensation." In other words, it is only a facility for an emergency recovery of a fair quarter-yearly installment of a ten-year valuation, pending substituted proceeding in equity. The breaking down of the arbitration scheme in nowise impairs the overriding contract of rental at a ten-year term rate, and a recovery at law, upon a miscarriage of arbitration, would simply be taken into account as a credit, upon the appraisal when made, as it is . to be made, in this suit. That seems to me to be the single function of the provision, and my view is borne out, to some extent, by the practical construction given it by the landlord by his suit to recover for a quarter year's use and occupation in advance of such use, an impossible thing *extra* the contract.

The power of the court to enjoin the prosecution of a foreign suit is unquestionable and conceded. *Margarum* v. *Moon, 63 N. J. Eq. 586.* The point elaborately argued in the briefs is whether the case is one in which the power ought to be exercised. The admonition running through the authorities is to exercise it sparingly. Where the court of a sister state has jurisdiction of the subject-matter and the parties, equity will not interfere unless upon a clear showing that the process is being used in an unconscionable manner—oppressively—as instanced in *Standard Roller Bearing Co.* v. *Crucible Steel Co., 71 N. J. Eq. 61,* or, as was there said, "unless the case involves some equitable element which it cannot apply." See *Shaw* v. *Frey, 69 N. J. Eq. 321.* Chancellor Pitney, in *Bigelow* v. *Old Dominion Copper Mining and Smelting Co., 74 N. J. Eq. 457,* said: "On general principles, equity will not interfere with the right of any person to bring an action for the redress of grievances—the right preservative of all rights—except for grave reasons, and on grounds of comity the power of one state to interfere with a litigant who is in due course pursuing his rights and remedies in the courts of another state ought to be sparingly exercised. The courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction over the courts of Massachusetts, nor proceed in giving judgment here upon the idea that the courts of that commonwealth are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction."

I cannot find in the circumstances of the case any equitable ground for enjoining the suit. That the supreme court of New York has complete jurisdiction of the issues raised before it, and of the parties, is undeniable. The issues there and those of this bill are not identical. Though the controversies involve the same subject-matter, and a decree in this suit would settle the rights of the parties conclusively, there is no conceivable legal theory upon which the defendant can be enjoined to forego the determination of his claim for a quarter year's rent (either as an integral part, or independent, of the ten-year covenant) in the court of his choice, for the more comprehensive remedy of his bill. The selection of that forum by the defendant for the decision of the questions there involved was entirely permissible under the terms of the lease, and, although the complainant be put to additional trouble and expense in defending that action, and the judgment be *res adjudicata, pro tanto,* on the final hearing of this cause, the difficulty and dilemma afford no reason for intervention. Whether the views of the New York court will accord with those I entertain as to the construction to be given the contract, and whether it will measure the damages accordingly, or regard the suable period as distinct from the ten-year term and determine the value regardless, we are not concerned with on this motion. *Federal Trust Co.* v. *Conklin, 87 N. J. Eq. 185.* The complications induced by the suit at law can be adjusted on the final hearing.

Moreover, the defendant's action was begun first. The bill here was filed before his suit was started, but process was not served, and jurisdiction of the subject-matter and the parties was not acquired until long afterwards—approximately three months. The defendant is a non-resident. The filing of a bill and the issuing of process, not served, in an action *in personam* against a non-resident, do not commence a suit in equity. Service is essential. Commencement is marked by the issuance of subpœna after bill filed, provided the subpœna is instrumental, directly or indirectly, in bringing the defendant within the jurisdiction of the court. See *Crowell* v. *Botsford, 16 N. J. Eq. 458; Haughwout* v. *Murphy, 22 N. J. Eq. 531; Hermann* v.

*Mexican Petroleum Corp., 85 N. J. Eq. 367; Haupt Company* v. *Board of Education of Edgewater, 87 N. J. Eq. 362; Delaware River Q. & C. Co.* v. *Mercer Freeholders, 88 N. J. Eq. 506.* Being prior in point of time the New York suit has preference. This is generally recognized, and the authorities are numerous. I need only quote from *Peck* v. *Jenness, 7 How. 624:* "It is a doctrine of law too long established to require a citation of authorities that where a court has jurisdiction it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but in necessity. For, if the one may enjoin, the other may retort by injunction, and thus the parties be without remedy, being liable for a process for contempt in one if they dare to proceed in the other." An *ad interim* injunction will be denied and the restraining order will be dissolved.

The other question is whether this court has acquired jurisdiction over the person of the defendant.

The bill was filed May 31st, 1919, and the subpœna, attested on that day, was returned *non est inventus.* The defendant being a resident of New York, substituted service was made, returnable August 25th, 1919. On that day the defendant, upon a conditional appearance, obtained a stay of proceedings and an order that the complainant show cause why the order for substituted service should not be vacated. In the meanwhile a second subpœna issued and was served personally on the defendant, in this state, on August 27th, 1919, and motion is made to set aside the writ and service on the ground that a second subpœna cannot go forth without the order of the court.

The order for substituted service was improvidently entered. The suit is in no sense *in rem* or *quasi in rem. Kempson* v. *Kempson, 63 N. J. Eq. 783; Andrews* v. *Quayaquil and Quito Railway Co., 69 N. J. Eq. 211; 71 N. J. Eq. 768; Amparo*

*Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 197.* The leasehold is in this state, but the yield and not the land constitutes the *res.* The cause of action is transitory—cognizable in any jurisdiction where the defendant may be found. Equity acts *in personam* and service, other than personal, is nugatory. Statutory or substituted process is a nullity, and a decree based upon it would·be without effect and void. *Pennoyer* v. *Neff, 95 U. S. 714; Stang* v. *Redden, 28 Fed. Rep. 11.* The order for substituted service will be set aside.

·The order for service by publication being vain—no more, in legal effect, than a piece of blank paper—there was then nothing but a subpœna returned "not found" at the time the second one was issued and served. There is no rule of procedure in chancery requiring a court order for a second·subpœna after the first has been misspent. The writ, although issued out of and under the seal of the court, is but a notice to the defendant to appear. It is not a mandate to one of the court's officers, and, until *P. L. 1880 p. 74,* could be served by any person. · *West* v. *Smith, 2 N. J. Eq. 309.* Section 3 of· the Chancery act, which has been in our statutes since 1799 (*Pat. L. p. 429*), empowers the solicitor in a cause to issue it, and the fair implication is, that he may do so *toties quoties* until service, viz., until legal notice of the suit be given the defendant. Whatever the procedure may be in other jurisdictions, the practice has grown up in this court, if not by virtue of the statute under its influence, which has been uniformly followed and is now firmly established, that subpœna may issue as often as necessary to bring the defendant into court, and that without an order. *Ewald* v. *Ortynsky, 78 N. J. Eq. 527,* is cited as an authority in denial of this view. In that case the sheriff's return, regular upon its face, was, that service had been made upon the defendant corporation by delivery to one Barna, its president and agent. The corporation, instead of moving to quash the writ and service, filed a plea *in bar* to the jurisdiction, setting up that Barna was not its president and agent. The complainant joined issue and went to trial on the question of fact, which was found against him. Under the old practice, then prevailing but shortly

afterwards changed, a plea found to be true, however deficient in point of law, brought the suit to an end. To prevent a collapse Vice-Chancellor Garrison granted leave to withdraw the replication, struck out the plea as insufficient in law, and added to the order "that the complainant may issue and have served a new subpoena upon the said defendant." The appeal challenged the vice-chancellor's course, permitting the withdrawal of the replication after a hearing on the issue of fact and then determining the sufficiency of the plea as a matter of law, and the appellate court ruled that it was approved by authority, and affirmed *78 N. J. Eq. 527*. The requirement of an order for a new writ was not dealt with. That the taking out of a new writ was formally authorized in an already all-sufficient order, and, thus sanctioned, was approved by the upper court, simply testifies its propriety, not its necessity.

The text in *32 Cyc. 446*, that "the court has inherent power to award such further process (*alias* writ), but the clerk has no such authority to issue it without an order of the court, in the absence of statute," manifestly, is not applicable. It is based upon, and finds its limitations in, the codes of the states represented by the cases cited in the foot notes.

The motion to quash the writ and service will be denied. No costs.