36 N.J. Super. 265 (1955)
115 A.2d 614
ANGELA C. HAMMER, PLAINTIFF-APPELLANT,
v.
ARMAND HAMMER AND UNITED DISTILLERS OF AMERICA, INC., A BODY CORPORATE, DEFENDANTS-RESPONDENTS. ARMAND HAMMER, PLAINTIFF-RESPONDENT,
v.
ANGELA C. HAMMER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1955.
Decided June 24, 1955.
*267 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Henry Milberg argued the cause for the appellant Angela C. Hammer (Mr. Samuel Nashel, attorney).
Mr. Edward J. O'Mara argued the cause for respondents Armand Hammer and United Distillers of America, Inc. (Mr. Theodore D. Parsons and Mr. John Warren, Jr., of counsel for Armand Hammer (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys); Mr. John F. Lynch, of counsel for United Distillers of America, Inc. (Messrs. O'Mara, Schumann, Davis & Lynch, attorneys)).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Appeal is taken by Mrs. Angela C. Hammer from an interlocutory order of the Chancery Division which enjoins her from instituting or prosecuting in any jurisdiction other than New Jersey any action against any defendant in the cause, including specifically four actions pending in the New York Supreme Court, and which, further, consolidates two actions in the New Jersey Superior Court. The appeal attacks the injunction and the consolidation, and this necessitates in the first place a somewhat detailed statement by us of the six actions mentioned, in order to show wherein they overlap.
*268 Of these actions, the one first instituted was for an account. It was commenced by Mrs. Hammer on April 30, 1954 in the New Jersey Superior Court against her husband, Dr. Armand Hammer, and a corporation in which he has an interest. In her complaint she alleges that he and she had formed a partnership for the operation of a farm and later for the raising of Angus cattle, and that he had appropriated to himself her share of the partnership assets. Her amended and supplemental complaint, filed January 19, 1955, contains also this accusation of cruelty:
"The defendant violated the faith, trust and confidence reposed in him by her and willfully, maliciously and deliberately and in the advancement of his personal, private and selfish interests, pursued a course or conduct, employed techniques, tactics and practices calculated and designed to cause her to be and become ill and disabled and to destroy her will. That he connived to bring about and induce the illness from which she is suffering in an attempt to render her destitute and mentally, physically and legally incompetent and helpless to deprive her of her interest in the partnership and to render no accounting to her."
The other action in the New Jersey Superior Court was commenced next, namely, on November 5, 1954. This was brought by Dr. Hammer against his wife for divorce on the ground of extreme cruelty. On January 8, 1955 she filed an answer, referring to the charges made by her in the accounting action, but elaborating considerably on the subject of his cruelty toward her:
"4. * * * (D): * * * That she has been excluded from participating in the operation of said partnership business since on or about the month of August 1952, and the defendants have dishonestly appropriated all of the assets and profits of the partnership to themselves, in an attempt to and for the express purpose of cheating, defrauding and depriving her of her lawful rights and interest in and to the partnership profits and property. She further states that her husband possesses tremendous wealth, is highly influential in political, business and social circles, and with all of the power, influence and resources at his command he is attempting to destroy her.

* * * * * * * *
(H) * * * [On one occasion he] threatened her with serious bodily violence and injury and to `beat her brains out' while brandishing *269 a metal pipe and pursued her so that she was required to summon the police to her home for protection and to prevent him from executing the threats made by him against her.

* * * * * * * *
FIRST SEPARATE DEFENSE * * * That he willfully, maliciously and deliberately and in the advancement of his personal, private and selfish interests, pursued a course of conduct, employed techniques, tacts and practices, calculated and designed to cause her to be and become ill and disabled and to destroy her will. That he exploited her for his own ends and he connived to bring about and induce the illness from which she is suffering, in an attempt to render her destitute, and mentally, physically and legally incompetent and helpless and thus to deprive her of her marital rights, property and property rights, income and the proceeds therefrom.
SECOND SEPARATE DEFENSE * * * [On another occasion he] flew into a rage and brutally attacked her, blackening her eyes and injuring her nose and face, as a result of which she suffered great pain and deep mortification and shame. * * * he persisted in his excessive attentions to and familiarities with other women, knowing full well the distressing and harmful effects upon her mental and physical health. She further alleges that he continued to threaten, intimidate and assault her, to make life generally miserable for her and to impair her health in an attempt to render it impossible for her to continue to cohabit with him."
Of the four New York actions brought by her, one was for an account, duplicating in part her New Jersey accounting action; another was for conversion, also reiterating in part her New Jersey accounting action; and a third was for the replevin of a yacht. Mrs. Hammer seems to submit to the restraint imposed below as to these three actions, making no protest whatever to us as to them. But we cannot ignore the litigation; it enters into the accusation, made against her, of multiplying suits.
In her fourth New York action she asks for separation and support from her husband, charging him with cruelty and desertion. Though the summons here is dated October 29, 1954, it seems to be conceded that under New York law the suit is not to be deemed to have been commenced until January 7, 1955, the 42nd day after the first publication under the order of publication.
The cruelty with which Dr. Hammer is charged in this action consists in part  as set forth in three paragraphs of *270 her complaint  of his demands, physical violence and fraud causing her to turn over to him property of hers, for which he has allegedly never accounted. To this extent then, her separation suit in New York calls for a litigation apparently of facts which were already in litigation in her accounting suit in New Jersey. But more important than that, the New York separation action doubtless involves the charges of cruelty spelled out in her answer in the New Jersey divorce action in some detail and indeed referred to in her New Jersey accounting action.
Notwithstanding this New York action for separation and support (in which Dr. Hammer appeared, as herein stated), she applied for, and on February 11, 1955 secured, in his divorce action in New Jersey support pendente lite and a counsel fee. He, it is claimed, may be subjected to counsel fees in the New York separation action also.
In January 1955 he, appearing specially in her New York separation act, moved to dismiss that action on the ground that since neither of them was domiciled in New York, the court there lacked jurisdiction of the subject matter. She claims  and we will assume it  that in the circumstances his purported special appearance constitutes under New York law a general appearance. It should be added that this motion has never been disposed of, for the New York court directed that it be heard on February 21, 1955, but before then, Dr. Hammer had secured the order appealed from, enjoining the New York actions.
Mrs. Hammer's first point has to do with the restraint of the New York action for separation and support. We need not here deal generally with actions of peace or with the principles governing the issuance of an injunctive order where there is a multiplicity of actions, here and abroad, overlapping in part or logically inconsistent (surely, if one spouse is entitled to a divorce, the other should not, in any rational state of affairs, be awarded a separation). The issues here do not involve us in these matters.
Mrs. Hammer's argument in part seems to be that largely because of Dr. Hammer's motion to dismiss the New York *271 action, the New York court first secured "possession of the controversy." That, she says, settled the matter; after that, the New Jersey court had no business in interfering with the New York action. This is not the case in which to decide precisely what criterion is to be employed in determining which of two suits in different jurisdictions is entitled to precedence. Various criteria are suggested: "possession of the controversy" (Prudential Ins. Co. of America v. Merritt-Chapman & Scott Corp., 112 N.J. Eq. 179, 186 (Ch. 1933) and Chancery cases cited); the more distinct criterion employed in certain circumstances by the federal courts, namely, the filing of the complaint with the court, at least where process subsequently issues in due course (Penn General Casualty Co. v. Commonwealth of Pennsylvania, 294 U.S. 189, 196, 55 S.Ct. 386, 79 L.Ed. 850 (1934)); or the technical commencement of the action (as to when an action is commenced in various jurisdictions, see 1 C.J.S., Actions, § 129, p. 1396). O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 (1951), uses the phrase "jurisdiction of the issue"; but a study of the cases cited by it hardly indicates that the court intended thereby to lay down some other criterion.
At all events, we conclude that whatever standard we take here, the New Jersey divorce suit has priority over the New York separation suit. It was commenced first. The New Jersey complaint was filed first; the New Jersey order for publication was secured first; and Mrs. Hammer had filed her answer in the New Jersey case some two weeks before Dr. Hammer made the motion to dismiss the New York separation action  the only step he apparently has taken in that cause.
Mrs. Hammer's further argument seems also to hinge on the effect of Dr. Hammer's motion to dismiss the New York action for lack of jurisdiction of the subject matter. She says that as a consequence of that motion he is now estopped from denying that the New York separation suit secured priority over the New Jersey divorce suit. He cannot, she adds, complain of duplication in litigation for by making the motion he has chosen to litigate in both courts.
*272 The argument is without merit. He did not choose to litigate in the New York forum. Quite the contrary; the motion was an attempt to rid himself of the litigation in that forum. Not having chosen to litigate in New York, he certainly cannot be said to have waived any precedence to which the New Jersey action was entitled. There is even less substance to Mrs. Hammer's contention that she to her prejudice relied on his motion to dismiss, thus estopping him from denying that the New York action has precedence; she still may counterclaim in the New Jersey action, asking for such relief as she wishes. The first point falls.
Mrs. Hammer's second point is that the consolidation of the two New Jersey suits was unwarranted. There is a preliminary question here, namely, whether on an appeal under R.R. 2:2-3(a) from a provision of an interlocutory order, all other provisions of that order and indeed all interlocutory orders affecting the rights of the parties with respect to the matters in question, are automatically open to review. Skirvin v. Mesta, 141 F.2d 668 (10 Cir., 1944); but see Sheldon v. Moredall Realty Corporation, 95 F.2d 48 (2 Cir., 1938); Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82, 139 A.L.R. 1 (3 Cir., 1941); Loew's Drive-In Theaters v. Park-In Theaters, 174 F.2d 547 (1 Cir., 1949); 28 U.S.C.A. § 1292.
We have decided to pass the question, but might note here our conclusion that under the amendment to R.R. 2:2-3(b), effective September 7, 1955, leave to appeal should be sought in any case as to all orders, and all provisions in any order, not specified in R.R. 2:2-3(a).
R.R. 4:43-1 authorizes the consolidation of actions when they involve a common question of either law or fact, arising out of the same transaction or series of transactions. In Mrs. Hammer's answer in the divorce action, in paragraph 4 (D) above quoted (and it would seem too in the first separate defense also quoted) she, accusing him of cruelty, makes reference to the New Jersey accounting action and the alleged misappropriation of the partnership assets, coupling therewith allegations as to his attempt "to destroy her" (or *273 "to destroy her will"). Factual questions as to this misappropriation therefore are raised in both actions. We pass over, as of lesser significance, the incidental injection into the New Jersey accounting action of the issue of cruelty  in particular the charge there made against her husband of a course of conduct allegedly designed by him to cause her to become ill and "to destroy her will."
In these two suits, then, there are in any event common questions of fact arising out of the same transactions (as to the significance of the word "transaction," see Metropolitan Casualty Ins. Co. v. Lehigh Valley R. Co., 94 N.J.L. 236 (E. & A. 1919)). But Mrs. Hammer says assume all that to be so, still these common questions are not basic to both suits. We rather think otherwise. Having regard also for her complaint in the New York action for separation, we think there may be good reason to say that the allegations as to the misappropriation of partnership assets contained in her complaint in the accounting action have a major connection with the allegations of cruelty found in her answer to the divorce action.
Whether or not to consolidate causes is a discretionary matter. R.R. 4:43-1; 5 Moore's Federal Practice (2nd ed.), § 42.02. And under the circumstances, we are not disposed to say that here there was a manifest mistake on the part of the trial court in the exercise of that discretion. Smith v. Smith, 17 N.J. Super. 128 (App. Div. 1951). As has been said in another connection,
"Our judicial system contemplates that generally all matters in controversy between the parties * * * will be disposed of in a single action." New Jersey Highway Authority v. Renner, 18 N.J. 485 (1955).
Any difficulty presented by the restrictions upon discovery in connection with matrimonial actions (R.R. 4:98-5), can be worked out by the trial court.
In her last point, Mrs. Hammer attacks the blanket provision in the order appealed from, by which she is enjoined from instituting against her husband or the corporate *274 defendants in any jurisdiction other than New Jersey any action whether or not it is related to the litigation before us. We find no threat or suggestion of a threat or even of any apprehension of further litigation between the parties. There is no warrant whatever for this restraint. Hoffmann-La Roche, Inc., v. Weissbard, 11 N.J. 541, 551 (1953).
Modified.