387 A.2d 1051.

GAIL R. BROWN *v.* ALBERT H. BROWN.

JUNE 23, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J.   This action for divorce from bed and board is before us on appeal by the respondent, Albert H. Brown, from an interlocutory decree entered in the Family Court enjoining him from proceeding with a suit for absolute divorce which he had filed in Maryland.[1]

On May 24, 1974, petitioner, Gail R. Brown, filed this divorce action and also filed a petition seeking a number of temporary orders. On June 14 respondent entered a general

---

[1]Appeals from interlocutory decrees of the Family Court granting injunctions are authorized by G.L. 1956 (1969 Reenactment) §§9-24-7 and 14-1-52. *Johnson* v. *Johnson*, 111 R.I. 46, 48-50, 298 A.2d 795, 797 (1973).

appearance on his own behalf and listed an East Providence, Rhode Island address.

A hearing was held in Family Court at which the parties agreed to a set of temporary orders which were embodied in a decree entered on June 21, 1974. Among those orders was one requiring respondent to pay petitioner $300 every 2 weeks for the support of the three minor children of the parties. The respondent subsequently filed an answer to the divorce petition through counsel. He sought to have the petition denied because of alleged misconduct by petitioner.

The respondent's compliance with the child support order, however, left much to be desired. In January 1975 and January 1976 the court entered decrees adjudging respondent in contempt for failing to make the ordered payments. (In the former decree the court also granted a motion by respondent to reduce his biweekly payments because of changed circumstances.)

In March 1976 the court entered a third contempt decree, this one adjudging respondent in willful contempt. By that time his arrearages totaled $2,246 and the court stated that respondent would have been incarcerated if petitioner had requested that sanction. The court nonetheless continued the case for 3 months to allow respondent to purge himself of his contempt and reduced his biweekly payments to compensate for increases in petitioner's income.

The petitioner also filed a new motion, this one alleging that respondent had moved to Maryland and had filed a petition for divorce there. She sought an order restraining him from proceeding with that suit because of the pending action in Rhode Island and because of his outstanding contempt judgments.

After hearing arguments the court granted the motion and entered a decree which stated that respondent was "enjoined and restrained from proceeding with the Bill of Complaint for Divorce which he has filed in the Circuit Court for Prince

George's County, Maryland, and from instituting any new proceeding for divorce in any other jurisdiction until further order of this Court." From this decree respondent filed the appeal before us now.[2]

As a general rule, a court which has jurisdiction over a cause of action and over the parties may issue a valid order enjoining a person from beginning or prosecuting an action in the courts of a sister state. Annot., 6 A.L.R.2d 896, §2 (1949); Messner, *The Jurisdiction of a Court of Equity Over Persons to Compel the Doing of Acts Outside the Territorial Limits of the State*, 14 Minn. L. Rev. 494, 495-96 (1930); *see also* Restatement (Second) *Conflict of Laws* §53 (1971).

In this regard, respondent's appeal raises two general questions — first, whether the Family Court had the power to issue a binding antisuit injunction against him, and second, whether, if it had that power, it exercised it properly in this case.

The respondent concentrates his argument here on the first of these two issues. He contends that this injunction is void for lack of personal jurisdiction because he had established a Maryland domicile by the time the court issued its decree.

On the facts of this case, however, respondent's place of domicile is irrelevant to the jurisdictional question. The record shows that respondent was served with process in

---

[2]The respondent defied the court's order and proceeded with his action in Maryland. On October 22, 1976, he was granted a final decree of divorce a vinculo matrimonii, his bill of complaint having been taken decree pro confesso. The petitioner filed an appeal from that decree through Maryland counsel, but since she did so after the anti-suit injunction was issued by the Family Court, that fact is not relevant to the present case, if it ordinarily would be. *Compare Stultz v. Stultz*, 15 N.J. 315, 104 A.2d 656 (1954), *with Wm. Cameron & Co. v. Abbott*, 258 S.W. 562, 566 (Tex. Ct. App. 1924).

After the present appeal was docketed, the respondent filed a motion in Family Court to dismiss this case as moot because of the Maryland decree of absolute divorce. We remanded the case for a hearing on that motion, *Brown v. Brown*, 117 R.I. 967, 368 A.2d 578 (1977), after which the court denied the motion and returned the papers here.

Rhode Island, entered a general appearance, and filed an answer to contest the case on its merits, so that even assuming that respondent did establish a Maryland domicile, the court had already obtained jurisidiction over his person for purposes of this suit, Restatement, *supra*, §§28 and 33; James, *Civil Procedure* §§12.1 and 12.6 (1965), and that jurisdiction continued (and still continues), regardless of respondent's place of domicile, *Palmer* v. *Palmer*, 268 App. Div. 1010, 52, N.Y.S.2d 383 (1944), for any proceeding arising out of the original cause of action. Restatement, *supra* §26; *see Palmer* v. *Palmer*. Since the injunction here related solely to the prosecution of the pending action, we consider it a proceeding arising out of the original cause of action and not a new cause, so that the court had jurisdiction over respondent for the purpose of issuing this injunction. Restatement, *supra* §26.[3]

While courts exercise their power to enjoin foreign suits in a variety of situations, *see* McClintock, *Handbook of Equity*

---

[3]The respondent has cited two cases in arguing that the Family Court lacked jurisdiction to enjoin him from proceeding in Maryland. Neither case supports that position.

In *Brown* v. *Brown*, 24 N.J. Super. 198, 93 A.2d 616 (1953), a judgment of contempt against a defendant who had obtained a foreign divorce in defiance of a New Jersey anti-suit injunction was reversed for lack of findings on his claim of a change of domicile. *Id.* at 202-04, 93 A.2d at 619. The defendant had not been served in New Jersey in the injunction proceeding and there was no suit pending against him at the time the injunction was sought. Thus, in *Brown* the only basis for personal jurisdiction to issue the anti-suit injunction would have been domicile in the enjoining state. In the present case, however, as we have stated, the Family Court had a jurisdictional basis independent of the respondent's domicile.

In *Stambaugh* v. *Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974), a Florida domiciliary who was a defendant in a Pennsylvania bed and board divorce action and who had appeared generally in that action defied a Pennsylvania anti-suit injunction and obtained a divorce in Florida. The Pennsylvania Supreme Court held that the Florida divorce was entitled to full faith and credit. In doing so, however, the court did not hold, as the respondent here suggests, that the Pennsylvania courts did not have the power to issue anti-suit injunctions against foreign domiciliaries. *See id.* at 163, 329 A.2d at 491-92 (Roberts, J., dissenting). Rather, the court concentrated on the propriety of a court's issuing an anti-suit injunction against a foreign domiciliary, a question we shall consider next in this opinion. See note 4.

300-02 (1936); Messner, *supra* at 496-98; Re, *Cases and Materials on Equity and Equitable Remedies* 150-64 (1975), that power is exercised sparingly and only where the equities of a case clearly warrant such injunctive relief. *Lehigh Valley Railroad v. Andrus,* 91 N.J. Eq. 225, 228, 109 A. 746, 747 (1920); *Bigelow v. Old Dominion Copper Mining and Smelting Co.,* 74 N.J. Eq., 457, 473, 71 A. 153, 160 (1908); McClintock, *supra* at 302; Messner, *supra* at 498. This judicial restraint is based on a number of considerations, including the difficulty of enforcing such injunctions, McClintock, *supra,* at 300; Restatement, *supra* §53, Comment b, the reluctance to interfere with an individual's right to seek redress in the forum of his own choice, *Bigelow v. Old Dominion Copper Mining and Smelting Co.,* 74 N.J. Eq. at 473, 71 A. at 160; *McClintock, supra* at 302, and the desire to avoid interference or conflicts with judicial proceedings in sister states. *In re Smith,* 100 R.I. 663, 673-74, 219 A.2d 126, 132 (1966)(Joslin, J., concurring and dissenting); McClintock, *supra* at 300; Restatement, *supra.*

In view of these considerations, a court should not, as a general rule, exercise its conceded power to enjoin a foreign divorce proceeding if the spouse sought to be enjoined is a bona fide domiciliary of the foreign jurisdiction. Annot., 54 A.L.R.2d 1240, 1250-51 (1957); *see, e.g. Kleinschmidt v. Kleinschmidt,* 343 Ill. App. 539, 550, 99 N.E.2d 623, 628 (1951); *McDonald v. McDonald,* 182 Misc. 1006, 52 N.Y.S.2d 385 (Sup. Ct. 1944); *Smith v. Smith,* 364 Pa. 1, 4, 70 A.2d 630, 632 (1950). Foreign domicile is less significant, however, where the courts of the injunctive state have acquired jurisdiction of a matrimonial action between the parties prior to establishment of the foreign domicile and institution of the foreign action. 54 A.L.R.2d at 1246; *Hammer v. Hammer,* 36 N.J. Super. 265, 271, 115 A.2d 614, 617 (1955); *Palmer v. Palmer,* 268 App. Div. at 1011, 52 N.Y.S.2d at 384; *O'Connor v. O'Connor,* 137 N.Y.S.2d 212 (Sup. Ct. 1955).

Thus, in a situation like this, where respondent was

a Rhode Island domiciliary when petitioner instituted the Rhode Island action for divorce from bed and board, and where respondent entered a general appearance in the action, his later establishment of a domicile in Maryland was not a controlling factor in the Family Court's determination of the propriety of enjoining prosecution of his Maryland divorce action. Of course, in a particular case other reasons may exist why the Family Court should yield jurisdiction to a foreign court. Here, there are no such reasons, and, to the contrary, the circumstances confronting the Family Court clearly supported its retention of jurisdiction and its effort to protect that jurisdiction.

In the first place, the injunction was warranted in order to prevent a multiplicity of suits, particularly here where the Rhode Island court had both parties before it and was better able than the Maryland court to deal with issues like support and alimony which could arise in either of the suits. McClintock, *supra* at 296; Re, *supra* at 155-56.

Second, because of the possibility of conflicting decisions on these issues common to both suits, the court had an interest in preserving its prior jurisdiction over this controversy, *Trustees of Princeton University* v. *The Trust Co. of New Jersey*, 22 N.J. 587, 598, 127 A.2d 19, 25 (1956); McClintock, *supra* at 296, and even a duty to do so, in order to decree complete and final justice between the parties in the matters before it. Annot., 6 A.L.R.2d 896, §3 at 902 (1949). That jurisdiction in this case extended not only to the marital status of the parties but also to alimony and child support, and the court was warranted in seeking to prevent respondent from confusing and complicating its determination of those issues (as, in fact, he has since done — see note 2).

Finally, by the time this injunction was sought, respondent had already been adjudged in willful contempt of his child support orders and a support order was still outstanding. The court was warranted in using its equitable powers to enforce

its orders and to prevent the child support issue from being sidetracked by respondent's actions in another jurisdiction. *Cf. Goldstein* v. *Goldstein,* 109 R.I. 428, 286 A.2d 589 (1972)(no abuse of discretion in enjoining entry of final divorce decree to insure compliance with an interlocutory divorce decree). Even if that foreign action would have no legal effect on the issues before the Rhode Island court, it would, again, complicate the resolution of those issues and would place an unfair hurdle in petitioner's way as she sought to adjudicate her rights arising from the marriage.

In view of these considerations, we conclude that there was no abuse of discretion by the trial justice in issuing the decree on appeal here. *Cf. id.*[4]

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Family Court for further proceedings.

Mr. Justice Weisberger did not participate.

*Abedon, Stanzler, Biener, Skolnik and Lipsey, Howard I. Lipsey,* for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Howard E. Walker, Paul A. Silver,* for respondent.

---

[4]In concluding that the trial justice could properly enjoin the respondent from suing in his own domicile state, we stand in apparent conflict with the Supreme Court of Pennsylvania which stated that anti-suit injunctions "may not properly issue where it is established that the enjoined spouse is a domiciliary of another state." *Stambaugh* v. *Stambaugh,* 458 Pa. 147, 154, 329 A.2d 483, 487 (1974).

We consider the Pennsylvania court's broad statement to be inconsistent with the law of equity on this subject, and we believe the better view is that of the dissenting justice in *Stambaugh,* who stated that a person's bona fide domicile in another state "is not determinative on the question whether an anti-suit injunction may validly issue. Rather, it is a factor to be weighed with all the others." *Id.* at 164-65, 329 A.2d at 492 (Roberts, J., dissenting).