Hillsborough
No. 84-447

# V & V Corporation & a.
## v.
# American Policyholders' Insurance Co.

October 30, 1985

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester, and *Winer, Pillsbury and Bennett P.A.*, of Nashua (*James C. Wheat* and *J. Bradford Westgate* on the brief, and *Mr. Wheat* orally), for the plaintiffs.

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*Stephen J. Dibble* on the brief and orally), for the defendant.

KING, C.J. This case comes before us on appeal from an order of the Superior Court (*Bean,* J.) denying full faith and credit to a summary judgment of the Massachusetts Superior Court for Worcester County and, in response to a petition for declaratory judgment (RSA 491:22), finding coverage as between both V & V Corporation and Denis Vaillancourt, its officer, and the defendant insurer. We affirm.

The factual background of this appeal is as follows. On August 25, 1976, vehicles operated by Denis Vaillancourt and William Sage collided in Windham, injuring seriously not only the drivers but also

Hazel Sage and Charles Corkum, passengers in the Sage vehicle. Mr. Vaillancourt is a resident of New Hampshire, and his company, V & V Corporation (V & V), owner of the vehicle that Mr. Vaillancourt was operating, is a New Hampshire corporation with its principal place of business in this State. The Sages and Corkum are residents of Massachusetts.

In November, 1977, the Sages and Corkum sued both Vaillancourt and V & V, by complaint filed in the Superior Court for Worcester County, Massachusetts, to recover damages for personal injuries suffered in the accident. Service was made in New Hampshire upon both Vaillancourt and V & V in January, 1978. Neither Vaillancourt nor V & V appeared or answered the complaint, although they did forward it to their insurer, American Policyholders' Insurance Co. (API), which refused coverage. Defaults were entered against Vaillancourt and V & V in the Massachusetts court, but it is agreed that the Sages and Corkum did not seek entry of a default judgment as allowed under Massachusetts procedure.

The Sages and Corkum filed an amended complaint in February, 1978, in the same Worcester County court, reiterating their causes of action against Vaillancourt and V & V and adding six further counts alleging causes of action against API and another insurer, Norfolk & Dedham Mutual Fire Insurance Co., in order to bring the insurers into the action and determine issues of coverage. No service of this amended complaint was made upon Vaillancourt and V & V.

Counsel for both insurers appeared and filed answers to the amended complaint. Copies of these responsive pleadings were not sent to Vaillancourt and V & V, although certain other pleadings were copied and sent to them; namely, both API's motion for summary judgment in March, 1979, and its affidavit of notice of motion for summary judgment to be heard by the Massachusetts court on February 26, 1980. The next day, February 27, 1980, that court, having received no response to the pending motion, granted it in favor of API against the Sages and Corkum on the issue of whether the insurance policy of Vaillancourt and V & V with API provided coverage to either of them. The judgment, entered that day, recited no action in respect to the claims against either Vaillancourt or V & V.

Subsequent to this determination of the Massachusetts court but prior to the resolution of all aspects of the Massachusetts action, the Sages and the estate of Charles Corkum (who had died in the interim) brought a duplicate suit in New Hampshire against Vaillancourt and V & V, seeking damages for personal injuries and, in the case of Corkum, wrongful death. The defendants in that action also tendered these writs to API, but the insurer again declined cover-

age, relying on the summary judgment granted in its favor by the Massachusetts court.

Vaillancourt and V & V, and the Reliance Insurance Co., which had made payments to the Sages to the extent of their uninsured motorist coverage and thus had a lien interest in the matter, thereupon petitioned the superior court for declaratory judgment, seeking to determine, *inter alia*, API's coverage obligations in this instance. A hearing on the merits was held, but in March, 1982, the trial court stayed further proceedings pending the outcome of any suit by the Massachusetts plaintiffs to enforce any judgment that might be rendered by the court there, stating that the question of the jurisdiction of the Massachusetts court and that of insurance coverage were not properly before it.

Vaillancourt and V & V appealed the stay order to this court which, in September, 1983, remanded the case to the superior court, ordering, *inter alia*, that the trial court decide whether the Massachusetts summary judgment in favor of API was entitled to full faith and credit in the courts of New Hampshire.

By order dated March 22, 1984, the superior court found that the Massachusetts summary judgment was not entitled to full faith and credit, on the ground that the Superior Court for Worcester County had not obtained *in personam* jurisdiction over either Vaillancourt or V & V. It also found that the API policy by its terms did afford coverage to Vaillancourt and V & V. API then moved to set aside the verdict and made other requests, all of which were denied. The insurer has appealed.

 We must first consider the claim by the insurer that the summary judgment it received in the Superior Court for Worcester County against the Massachusetts plaintiffs on the issue of its obligation to provide coverage is valid and is, as to that issue, *res judicata*. Generally, a judgment rendered in this country by a court of competent jurisdiction is entitled under the United States Constitution to full faith and credit; that is, to both recognition and enforcement in sister States. U.S. CONST. art. 4, § 1. The effect of the judgment of a court depends in the first instance upon the local law of the State wherein it is rendered. Only if the judgment is valid under the law of the rendering State is it entitled to recognition and enforcement in other States; if the judgment is under local law void and subject to collateral attack, it will be so treated in all other jurisdictions. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 93 (1971).

API contends that the Superior Court for Worcester County had acquired valid *in personam* jurisdiction over Vaillancourt and V &

V. Vaillancourt and V & V deny this allegation and collaterally attack the judgment upon which API now relies. Therefore, we begin our analysis by reviewing our superior court's decision that the Massachusetts default was not entitled to full faith and credit. To do so requires us to construe the Massachusetts long-arm statute, upon which jurisdiction over Vaillancourt and V & V purportedly was grounded.

The provision of the Massachusetts long-arm statute with which we are concerned is Mass. Gen. Laws Ann. ch. 223A, § 3(a) (West 1985), which allows the court to exercise jurisdiction over a person "who acts directly or by an agent, as to a cause of action . . . arising from the person's (a) transacting any business in this commonwealth." We are required first to examine whether by its terms section 3(a) authorized the assertion of jurisdiction over Vaillancourt and V & V and then, if such authority is found, to consider whether the assertion of jurisdiction comported with due process as mandated by the United States Constitution.

Section 3(a) requires a court to undertake two inquiries, those being whether the defendant "transact[ed] . . . business" in Massachusetts, and whether the cause of action arose by virtue of that business. The record supports the contention that Vaillancourt and V & V did transact some business in the Commonwealth. V & V did undertake construction work in Massachusetts. Vaillancourt did negotiate a loan from one of the State's banks, and he did register some of the company's trucks in the Commonwealth. Given the Massachusetts courts' broad construction of this statute, see, e.g., *Ross v. Ross*, 371 Mass. 439, 358 N.E.2d 437 (1976); *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 376 N.E.2d 548 (1978); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193–94 (1st Cir. 1980) (construing § 3(a) in light of Massachusetts case law), the activities of Vaillancourt and V & V arguably fell within the literal embrace of the "transacting . . . business" portion of the statute.

We have greater difficulty concluding that the cause of action asserted by the Sages and Corkum "arose" from these business activities in the Commonwealth. The Massachusetts courts have yet to put a gloss on this aspect of the long-arm statute. The Court of Appeals for the First Circuit has construed the statutory requirement expansively, see *Hahn v. Vermont Law School*, 698 F.2d 48, 51 (1st Cir. 1983); *Nova Biomedical Corp. v. Moller*, supra at 195, but we note that the causes of action alleged in those cases—breach of contract and patent infringement—were closely related to the business transacted. That is not the situation here, where the cause of action sounds in tort for personal injuries, and the business transacted does not appear to have been implicated. See, e.g., *Mulhern v. Holland*

*America Cruises*, 393 F. Supp. 1298, 1304 (D.N.H. 1975); *but see Maiocca v. Walt Disney World Co.*, No. 80-958-S, slip op. at 6 (D. Mass. Apr. 22, 1983) ("arising from" construed to mean "in any way related to").

In the instant case, Vaillancourt on the day of the accident had driven to Methuen, Massachusetts, in order to procure parts for some of his vehicles. On his return, and after he had crossed into New Hampshire, his vehicle collided with that of the Sages. For all that appears, the accident had no connection with Vaillancourt's business activities in Massachusetts. *Cf. Cornelison v. Chaney*, 16 Cal. 3d 143, 127 Cal. Rptr. 352, 545 P.2d 264 (1976) (jurisdiction predicated on fact that the defendant, a trucker, was en route to California with cargo for a California addressee and planned to take cargo out of California on return trip, when his truck collided with a car driven by a California resident in Nevada). This is not the typical long-arm situation where activities of the defendant out-of-State have caused injurious consequences within the forum. Even though the resident plaintiff sues at home, the forum has a diminished interest when the tort has occurred out-of-State. *Mulhern v. Holland America Cruises, supra* at 1303. We decline to read the statute's "arising from" language as API does, to the effect that the tenuousness of the connection matters not at all.

■■ Even if we assume that the business activities of Vaillancourt and V & V meet the literal requirements of section 3(a), we doubt that it can be shown that the assertion of jurisdiction by the Massachusetts court comports with the constitutional requirements of due process. *See Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 7, 389 N.E.2d 76, 80 (1979). Due process considerations, as developed by several United States Supreme Court cases and restated by the Massachusetts court in *Good Hope Industries*, require us to ask "whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Id.*; *see also Hall v. Koch*, 119 N.H. 639, 646, 406 A.2d 962, 965 (1979). Although there can be no doubt of the existence of some business activities in the Commonwealth, the instant case appears to lie beyond the outer periphery of what is permitted by the due process clause in that: (1) the cause of action arose outside the forum State; (2) witnesses, as required, are located outside Massachusetts; (3) the cause of action did not arise out of the business activities of Vaillancourt and V & V in Massachusetts; and (4) the contacts of Vaillancourt and V & V with the Commonwealth were not substantial *and* continuous

enough to merit assertion of jurisdiction, given that the cause of action did not arise out of the business activities in Massachusetts. *Nova Biomedical*, 629 F.2d at 193; *Walsh v. National Seating Co., Inc.*, 411 F. Supp. 564, 573–74 (D. Mass. 1976); *Bork v. Mills*, 458 Pa. 228, 231, 329 A.2d 247, 249–50 (1974); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 35 (1971).

■ Finally, we note three other difficulties with API's attempt to use its Massachusetts summary judgment as a bar to the plaintiffs' petition for declaratory relief. First, the record indicates that no default *judgment* was ever entered by the Massachusetts court against Vaillancourt and V & V; it only entered judgment against the Sages and Corkum in favor of API. On its face, the order of the Superior Court for Worcester County dated February 27, 1980, purports to do no more. API should have cross-claimed against Vaillancourt and V & V, which would have given substance to the entry of summary judgment in its favor at that time. Second, the record of the Massachusetts proceedings indicates serious deficiencies in notice to both Vaillancourt and V & V once the Sages and Corkum amended their complaint to embrace the insurers. Such notice generally is required for a valid exercise of jurisdiction. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 26 (1971). Inasmuch as the Massachusetts court had not obtained jurisdiction over either Vaillancourt or V & V with respect to the liability suit, it is of no moment whether jurisdiction continued over the coverage suit. *See, e.g., Brown v. Brown*, 120 R.I. 340, 344, 387 A.2d 1051, 1054 (1978). In light of these procedural irregularities, we are not inclined to accord full faith and credit to the judgment of the Massachusetts court.

Third, any direct suit against the insurer allowed under Massachusetts law requires as a prerequisite a "judgment" against the insured. Here, the "default" recorded in the Superior Court for Worcester County is not a "judgment" but a phantasm, for Vaillancourt and V & V never submitted themselves to the jurisdiction of the Massachusetts court. There was no proper exercise of jurisdiction by that court and, hence, no valid judgment existed as a prerequisite to the suit attempting to tap the insurance coverage. *See Rogan v. Liberty Mutual Ins. Co.*, 305 Mass. 186, 188, 25 N.E.2d 188, 189 (1940). Furthermore, if, as it appears, in filing the amended complaint the Sages and Corkum merely began their suit again, then we meet once more the defects inherent in service, notice and pleading which we have discussed. Accordingly, we find that Vaillancourt and V & V have overcome any presumption of validity attaching to the judgment at issue. *Ely v. DeRosier*, 123 N.H. 249, 251,

459 A.2d 280, 282 (1983). The summary judgment of the Massachusetts court in favor of API against the Sages and Corkum is not valid or entitled to full faith and credit as against Vaillancourt and V & V on the issue of coverage. Therefore, the holding of the trial court on this issue is affirmed.

API next contends that the trial court erred in finding that the insurance policy issued to the plaintiffs Vaillancourt and V & V provided coverage for any liability arising from the accident in question. The trial court concluded that API was bound, because the insured's expectation was the procurement of "fleet automatic" insurance and because the policy was susceptible of an interpretation characterizing all of its coverages as "fleet."

■■ This court ordinarily has no jurisdiction over questions of fact determined in the superior court by a presiding judge, our function being only to consider whether there is any evidence from which the court below could draw its conclusions. *See Hardware Mut. Cas. Co. v. Hopkins*, 106 N.H. 412, 417, 213 A.2d 692, 696 (1965). Nevertheless, taking into account those facts found below, to the extent relevant and required, this court is the final arbiter of the interpretation of a policy of insurance. *Connolly v. Galvin*, 120 N.H. 219, 221, 412 A.2d 428, 429 (1980).

We are unable to agree with the trial court's characterization of the entirety of the plaintiffs' policy as one of fleet insurance. Coverage Form 120a, entitled "Automobile Physical Damage Insurance (Fleet Automatic), " is the only attachment to the policy which, by its terms, purports to grant fleet coverage. Moreover, the Declarations page, in summary of the coverage parts contained in the policy, clearly indicates the notation "fleet automatic" only after that insurance listed as "Automobile Physical Damage Insurance." Finally, the evidence supports a finding that no particular relevance is to be attached to the handstamps on the Declarations page, because API has introduced competent and uncontradicted evidence that these were internal company markings which did not appear on the plaintiffs' copy of the policy. Accordingly, the trial court's ruling that the entire policy was "fleet" was unsupported by the evidence.

Although our disagreement with the trial court's holding that the entire policy was "fleet" would appear to invalidate a finding of coverage in this instance, we view our conclusion as going only to the proper characterization of this one aspect of the policy. Even if the entire policy does not provide "fleet" coverage, coverage may arise from specific parts of the policy.

■ Our review of the API policy leads us to conclude that the liability coverage part is ambiguous in respect to which vehicles it

purports to insure. We begin our analysis by noting that the specific expectations of the insured—here, for a comprehensive fleet policy—are relevant only in light of an ambiguity in the policy, or, in the absence of an ambiguity, if it is proved that the parties' prior dealings led the insured "to form a reasonable belief" that the policy provided the claimed coverage. *Croteau v. John Hancock Mut. Life Ins. Co.*, 123 N.H. 317, 320, 461 A.2d 111, 113 (1983); *Grimes v. Concord Gen'l Mut. Ins. Co.*, 120 N.H. 718, 722, 422 A.2d 1312, 1315 (1980); *see also Hanover Ins. Co. v. Grondin*, 119 N.H. 394, 397, 402 A.2d 174, 176 (1979). A clause in an insurance policy is ambiguous when the contracting parties reasonably differ regarding its meaning, *Commerical Union Assurance Cos. v. Town of Derry*, 118 N.H. 469, 471, 387 A.2d 1171, 1172 (1978), in which case this court will construe the ambiguous clause in favor of the insured and against the insurer and will honor the reasonable expectations of the policyholder. *Andrews v. Nationwide Mut. Ins. Co.*, 124 N.H. 148, 153–54, 467 A.2d 254, 258 (1984); *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982).

The ambiguous language at issue is the phrase "see schedule" under the heading "Owned Automobiles" in the liability coverage part of the plaintiffs' policy. API contends that this phrase refers to the appended list of vehicles of V & V, and excludes any purported coverage for non-listed company-owned automobiles, one of which was involved in the accident which gave rise to this litigation. Vaillancourt and V & V argue that other language of the same liability coverage part, which provides that the insurer will pay all damages "arising out of the ownership, maintenance or use, including loading and unloading, of *any* automobile (emphasis added)," belies API's interpretation. Vaillancourt and V & V contend that the non-scheduled vehicle at issue was covered by virtue of this additional language.

We find the phrase "see schedule," which also occurs in the fleet coverage for automobile physical damage, to be patently obscure as written into this policy. According to API, for purposes of fleet coverage for physical damage, the schedule functions as an *inclusive* list, whereby to receive coverage, the insured must have designated the vehicle on the schedule of "covered automobiles" or notified the insurer when a new vehicle was acquired to replace a covered automobile. For purposes of liability coverage, however, API maintains that the schedule is an *exclusive* list of covered vehicles, despite the additional language which ostensibly insures "any automobile." The use of an appended schedule as an *inclusive* list agreeably meshes both with the fleet automatic policy provisions for physical damage and, indeed, the reasonable expectations of the insured in this case.

The use of the same schedule as an *exclusive* list with respect to liability coverage, however, in light of the insured's expectations of fleet coverage, is troublesome, and we must resolve the ambiguity against the insurer. *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, 123 N.H. 179, 182, 459 A.2d 249, 251 (1983).

The corporation insured its vehicles through the Aljane Agency and API. Vaillancourt claims that he understood the corporation policy to have been a fleet policy, such that all after-acquired company vehicles would be covered. Vaillancourt knew about the reporting requirements of such fleet provisions, but he also assumed that the Aljane Agency would periodically inquire of any changes in the fleet. There was certain other conflicting testimony, but none of it effectively invalidated the insured's claim that he had purchased, by means of advance premiums subject to adjustment, a fleet policy which would insure any and all vehicles acquired by V & V. Vaillancourt went to Aljane for a fleet policy, and he thought that was what he acquired. *See Lariviere v. New Hampshire Ins. Group*, 120 N.H. 168, 172, 413 A.2d 309, 312 (1980). Vaillancourt's business requirements were known to Aljane and thus were imputed to API. Under the facts and circumstances of this case, it was reasonable for the trial court to have concluded, in effect, that API was estopped to deny coverage. *See Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 690–91, 406 A.2d 711, 714 (1979). The court's denial of the insurer's motion to set aside the verdict was not error, notwithstanding the impropriety of its finding that the entire policy of insurance provided "fleet" coverage.

API's final argument is that the trial court erred in not granting its motion at the close of trial for findings of fact and rulings of law. API concedes that under RSA 491:15 the trial court is only required to make, in narrative form, findings of essential facts sufficient to support its decision. *Cote v. Eldeen*, 119 N.H. 491, 494, 403 A.2d 419, 420 (1979). The statutory intendment of providing this court with those questions of law "arising on the facts found by the trial court, as distinguished from the evidence," *R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 767, 367 A.2d 583, 588 (1976), continues to be satisfied by the narrative format. The trial court's order is sufficiently detailed in this instance to comply with the statute.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.